NEBRASKA MUTUAL BOND ASSOCIATION V. FRED KLEE.

FILED NOVEMBER 18, 1903.    No. 13,171.

1. **Pleading:** DURESS. The plea of duress as a defense to an action upon a contract is sufficient if it shows that, by reason of threats or other unlawful means, the defendant was deprived of his free will and understanding, and that the contract sued upon was not his free and voluntary act.

2. **Instructions.** Instructions examined, and *held* correctly given.

3. **Evidence.** Evidence examined, and *held* sufficient to sustain the verdict and judgment.

ERROR to the district court for Douglas county: PAUL JESSEN, JUDGE. *Affirmed.*

*Alexander A. Altschuler* and *John F. Moriarity,* for plaintiff in error.

*Albert S. Ritchie, contra.*

KIRKPATRICK, C.

This action was instituted in the district court for Douglas county by the Nebraska Mutual Bond Association, plaintiff, against Fred Klee, defendant, declaring upon three promissory notes aggregating $88. In his answer, the defendant pleaded that the notes were wholly void, and that their execution had been obtained by duress, in that the plaintiff, through its agents and others, threatened the defendant that, if he did not sign the notes and settle with the plaintiff, on an alleged charge that the defendant's son-in-law, one Charles W. Norton, had embezzled moneys from the Singer Sewing Machine Company, the plaintiff would prosecute and imprison Norton, and send him to the penitentiary; the answer alleging that said threats were made for the purpose of overcoming the will of the defendant, and that they did overcome his will, causing him to sign the notes; that he would not have signed them but for the threats mentioned. The answer alleged that Klee was a German by birth, and a working man, em-

ployed in the Union Pacific shops; that he was not well versed in the English language, and that, at the time of the signing of the notes sued upon, he was wholly unaccustomed to the transaction of such business; and that his mind was so weak as to be easily overcome by threats, such as those alleged, which were well calculated to overcome the will of a man of ordinary strength and experience. A second paragraph in the answer alleged substantially the same facts; that Norton, defendant's son-in-law, was charged with the embezzlement of a sum of money from the Singer Sewing Machine Company, and that plaintiff threatened to prosecute him unless defendant signed the notes and that defendant was induced by this threat to sign the notes.

In reply, plaintiff alleged that prior to the signing of said notes, Norton had applied to it for a fidelity bond, in favor of the Singer company, of $500; that, before giving this bond, plaintiff required an indemnity bond to secure it against loss by reason of signing the fidelity bond; that plaintiff then requested Klee, the defendant, to sign the indemnity bond, which he did, in the sum of $500, the bond being set out in the reply. The reply further alleged that Norton defaulted, and became indebted to the Singer company in about the sum of $115; that by agreement between Klee and the Singer company, this shortage was settled for the sum of $88, and that Klee instructed the plaintiff to pay this sum to the company, and gave the notes described in the petition in settlement of the amount so paid by plaintiff to the company.

There was a trial to the court and a jury, a verdict for defendant Klee, and judgment thereon. A motion for a new trial was overruled, and plaintiff presents the cause here by petition in error.

The record discloses that, some time prior to December 28, 1900, Charles W. Norton, who was a son-in-law of defendant Klee, sought employment with the Singer Sewing Machine Company at Omaha, but found that a condition of employment was a fidelity bond acceptable to the com-

pany. He made application to plaintiff company for a bond, but was told by it that it could not bond him unless he could indemnify them against loss. It appears that, as a reslult of his negotiations with plaintiff, the indemnity bond set out in plaintiff's reply was executed, signed by Norton and defendant Klee. In December, 1900, it appears that Norton was discovered to be short in his accounts with the Singer Sewing Machine Company in the sum of $88, and that company accordingly made a demand upon plaintiff, by virtue of its bond to the company. This sum was, thereupon, paid to the Singer Sewing Machine Company.

There seemed to have been some slight difference of opinion, between the agents and managers of plaintiff, as to whether plaintiff should rely upon the bond given by Klee for indemnity, or secure notes signed by Klee covering the amount of the loss sustained by plaintiff by reason of Norton's defalcation. It was, however, decided to arrange with Klee to give the notes. A meeting was accordingly arranged for at the office of plaintiff's president. As to what took place at this meeting, there is a conflict in the testimony. The testimony on behalf of plaintiff is that Klee was willing to sign the notes, being doubtful only as to his ability to pay unless given plenty of time. That testimony also represents him as indignant with Norton because of the latter's conduct, and as signifying his willingness to assist plaintiff's officers in apprehending Norton and prosecuting him.

Klee's version is substantially at variance with that of the plaintiff's. From the reporter's transcript of his testimony, it is almost painfully apparent that his knowledge of English was exceedingly limited, but it is sufficiently clear that he came to the office of the plaintiff in response to a request either by postal card or letter, and that he intended to bring with him a confidential friend, more familiar with the English language than he was, who it appears failed him in the last moment. He was unwilling to sign the notes. Something, it appears, was said about

sending his son-in-law to the penitentiary, and he was told that he had to sign the notes. It appears from his testimony that the threat of sending his son-in-law to the penitentiary operated on his mind and induced him to sign the notes, not so much because of a concern for his son-in-law, but rather as a result of contemplating the stigma that would attach to his daughter if her husband was imprisoned. Klee was cross-examined by plaintiff at some length; but a perusal of the questions and answers does not make it clear that anything was added to, or detracted from, the substance of his testimony in chief.

The trial court gave the two following instructions:

"4. Under the admissions and allegations made in these pleadings, the only issue which you are called upon to try is this: Were the notes set out in plaintiff's petition given by the defendant by reason of the threats of imprisonment of the said Charles W. Norton, made by the plaintiff or its agents to the defendant at the time said notes were given.

"5. The burden of proof in this case is upon the defendant and, after admitting the signing and execution of the notes, before he can avoid the payment thereof, he must prove by a preponderance of the evidence that said notes were not given voluntarily by him, but were obtained from him by such threats and duress as to overcome his will and understanding."

In addition to the above the trial court instructed the jury in the following language:

"You are instructed that duress, in order to avoid the payment of these notes, must be such an influence exerted by the plaintiff upon the defendant as to overcome his will and compel a formal assent to an undertaking when he really does not agree to it, and make that appear to be his free act, which is not his but is another's imposed upon him through fear, which deprives him of self control. And, in this case, if you find that the defendant has proved by a preponderance of the evidence that he signed these notes, wholly and entirely on account of the fear which the plaintiff had created in his mind that his son-in-law, Charles W.

Norton, would be sent to the penitentiary unless the same were signed, and that Norton would not be sent there if he did sign them, and the fear was such as to deprive the defendant of his understanding and deprive the transaction of its voluntary character, then you are instructed that such notes would be void, and your verdict should be for the defendant.

"If, however, you believe the defendant has failed to prove that his mind was so overcome by such threats that he was deprived of reason and understanding, then you will return a verdict in favor of the plaintiff for the full amount of said notes sued on."

The instruction defining duress is assailed by the plaintiff as insufficient under the law and authorities; and the cases cited in brief of plaintiff are to the effect that the duress necessary to relieve from a contract must consist of threats of immediate and unlawful imprisonment; that the person making the threat must seem to be in possession of the means to carry out the threat, immediately, and that the threats must be of a character sufficient to overcome the mind of a person of ordinary firmness and courage. This state has already taken its place in line with the more advanced position upon this subject, and that position is accurately set forth in the instructions given. To constitute duress sufficient to avoid a contract in this state, the means adopted need only be of a character necessary to overcome the will and desire of the injured party, whether that person be below or above the average person in firmness and courage, and whether the means employed come clearly within the common law definition of duress or otherwise. In other words, the law extends its protection to an individual without reference to whether he is strong or weak intellectually, and refuses to measure his rights by an arbitrary yardstick avowedly applicable only to men of ordinary intellect, firmness and courage. *First Nat. Bank of David City v. Sargeant,* 65 Neb. 594, and cases cited; *Galusha v. Sherman,* 105 Wis. 263. Under this view of the law, the jury is properly directed to inquir'

into the mental capacity of the defendant, and whether the threats, whatever they were, probably deprive him of his free will, inducing him to make a contract that he would not otherwise have made, rather than to the particular threats made, to see whether they meet with an arbitrary standard which may, or may not, be applicable to the person injured. The trial court committed no error in giving the instructions relative to the plea of duress.

It is next contended by plaintiff that the evidence is insufficient to sustain the verdict, and that the jury should have been instructed to return a verdict for plaintiff.

The argument of plaintiff in support of this objection is based, for the most part, upon its misconception of the law of duress as heretofore pointed out. With this misapprehension cleared away, we would hesitate to disturb the verdict of the jury. The defendant was an illiterate working man, almost wholly unable to speak English. He had been employed for a period of thirty years in the machine shops of the Union Pacific Railroad Company at manual labor. The credence placed by the jury in his testimony makes it necessary, for the purpose of this argument, to assume that so much of it as is reasonable and consistent is true. He came to the meeting at plaintiff's office directly from his work in the shops. He had expected a friend to be present at the interview with plaintiff's agents, but, as stated, this friend, whose superior knowledge of the English language made his presence peculiarly valuable, failed him in the last moment, and he entered the office alone. He says that he felt bad, and that fear for his daughter, and the effect upon her, if her husband were prosecuted criminally, preyed upon his mind, and he was thereby induced to sign the notes. In our view, it is reasonably to be inferred from his testimony that the signing of the notes was not his voluntary act, and that the jury, in whose presence his testimony was given, were justified in concluding that his signature was secured by duress, within the meaning of that term properly defined in the

instructions. It follows that the judgment ought to be affirmed, and it is recommended that the same be done.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.