BAKER ET AL. *v.* SCHOFIELD, RECEIVER OF THE
MERCHANTS' NATIONAL BANK OF SEATTLE.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 133.  Submitted January 15, 1917.—Decided March 6, 1917.

The rule that concurrent findings of fact by two lower courts will not
    be disturbed unless clearly wrong is here applied in support of find-
    ings of fraud and breach of fiduciary duty resulting in a trust.
Defendant, as receiver of a national bank, contracted on its behalf,
    with the approval of the Comptroller of the Currency, for the pur-
    chase of certain realty, used some of the bank's money in payments
    on the price, and, under apparent authority from the court, sold
    and assigned the contract for cash paid the bank. The assignee
    acted secretly for the defendant in taking the contract, and there-
    after assigned it secretly to him as an individual. Defendant re-
    signed as receiver, and subsequently the contract was fully per-
    formed and the real property became vested in a corporation whose
    shares for the most part were issued to the defendant. In a suit
    brought by his successor to regain the property for the bank, *Held:*
    (1) That the transaction was a gross breach of defendant's duty as
    receiver; (2) That he was estopped to claim that the purchase of
    the property was beyond the powers of the bank, *Case* v. *Kelly,*
    133 U. S. 21, distinguished; (3) That delay of the suit for sixteen
    years after the making of the contract and fourteen years after de-
    fendant's resignation as receiver was not laches, in view of the find-

ing that his successors in the receivership had no knowledge or equivalent notice of the fraud.

The seven year statute of limitations of Washington, Remington & Ballinger's Ann. Codes and Stats., § 789, does not apply when the claim of title accompanying possession is not made in good faith.

221 Fed. Rep. 322, affirmed.

THE case is stated in the opinion.

*Mr. B. S. Grosscup* and *Mr. Corwin S. Shank* for appellants.

*Mr. Frederick Bausman, Mr. R. P. Oldham* and *Mr. R. C. Goodale* for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

This is an action by John W. Schofield, as receiver of the Merchants' National Bank of Seattle, Washington, insolvent since 1895, against Charles H. Baker, receiver of the bank from 1895 to 1899, and others, seeking a decree declaring the defendants to be holders of certain real property in Seattle in trust for the plaintiff, and asking a conveyance thereof to the plaintiff.

The property in controversy is block 430 of Seattle Tide Lands, a tract of some twelve acres, and the leasehold of the harbor area lying in front of that block. In conformity with the provisions of the state law, the Merchants' National Bank had, prior to its failure, made application to purchase these lands. After the failure and the appointment of Charles H. Baker, receiver, this application was accepted by the State Board of Land Commissioners, and upon January 12, 1897, a contract was entered into between the State of Washington and the bank, through the receiver, by which the State agreed to sell and the bank to purchase block 430 of Seattle Tide Lands for $1488, payable in ten annual installments, sub-

ject to all liens for filling, and all taxes and assessments that might be levied or assessed on the land, and with a forfeiture clause in case the bank should fail to pay any of the amounts, either principal, interest, taxes or assessments, when the same should become due and for six months thereafter. Permission to make this contract was obtained by the receiver from the Comptroller of the Currency, and thereafter partial payments were made upon the contract.

Upon October 6, 1897, by order of the United States Circuit Court upon the receiver's petition to that effect, he was authorized to sell at private sale certain doubtful personal assets of the defunct bank, and thereafter, Baker, as receiver, assigned to S. G. Simpson the contract above mentioned for the consideration of $198.80, the transfer being approved by the Commissioner of Public Lands.

The assignment authorized the State of Washington to receive from Simpson, or his assigns, the performance of all covenants and agreements specified in the contract to be performed by the bank, and upon such performance to execute to him a patent for such tide land. By virtue of the ownership by Simpson of the contract to purchase tide lands block No. 430, he became entitled, under the laws of the State of Washington, to the preference right to lease certain harbor area adjacent and appurtenant to block No. 430. Upon the purchase by Simpson of the contract to purchase the tide lands, there was issued to him by the State of Washington a certain lease, designated "Harbor Lease No. 181," covering the harbor area appurtenant to the block.

In March, 1899, the contract between the bank and the State of Washington for the purchase of block No. 430, together with the harbor lease, was transferred by Simpson to Baker in his personal capacity, the record title continuing in the name of Simpson. On August 11, 1905, Simpson, acting for and on behalf of Baker, assigned the

contract for the purchase of block No. 430, together with harbor lease No. 181, to one Norton, the consideration named being one dollar. This assignment contained the same authorization as to the patent to be issued by the State as was contained in the assignment to Simpson. On October 16, 1905, the State of Washington issued to Norton a patent covering block No. 430, with the exception of a strip of land, thirty feet wide, which had been granted to a railroad company. In August, 1907, there was organized under the laws of the State of Washington the Seattle Water Front Realty Company. Upon incorporation of this company, Norton conveyed to it block No. 430, together with harbor lease No. 181, in payment for the issue of its capital stock of $250,000. About ninety-five per cent. of the stock was issued to Baker or to others who held for him.

In April, 1899, and a month after receiving the assignment from Simpson, Baker resigned as receiver; whereupon A. W. Frater was appointed receiver. On February 12, 1913, Frater resigned, and the present plaintiff was appointed receiver in his stead, and this suit was immediately begun.

Under this state of facts, the District Court entered a decree adjudging that the assignment by Baker to Simpson was fraudulent and was made for the sole use and benefit of Baker, and that the assignment of the contract to the defendant Norton by Simpson and the conveyance of Norton to the Seattle Water Front Realty Company were null and void. The decree provided that the Realty Company should execute and deliver to the clerk of the court below for the benefit of the plaintiff, as receiver, a deed covering its interest in block No. 430 and the assignment of harbor lease No. 181, and the receiver was directed to pay to the clerk of the court for the Realty Company the sum of $10,977.13, being the amount of the payment, with interest, made by the defendants to the State of

Washington under the contract for the purchase of block
No. 430, and upon the harbor lease, and for taxes. 212
Fed. Rep. 504. Upon appeal, this decree was affirmed by
the Circuit Court of Appeals for the Ninth Circuit. 221
Fed. Rep. 322.

Both the District Court and the Circuit Court of Ap-
peals found that the sale from Baker to Simpson was only
colorable, and that Simpson purchased the property for
Baker. Our consideration of the evidence must be gov-
erned by the well-settled rule in this court that, when two
courts have reached the same conclusion on a question of
fact, their finding will not be disturbed unless it is clear
that their conclusion was erroneous. *Stuart* v. *Hayden*,
169 U. S. 1, 14; *Baker* v. *Cummings*, 169 U. S. 189, 198;
*Towson* v. *Moore*, 173 U. S. 17, 24; *Hy-yu-tse-mil-kin* v.
*Smith*, 194 U. S. 401, 412; *Dun* v. *Lumbermen's Credit
Association*, 209 U. S. 20, 23; *Texas & Pacific Ry. Co.* v.
*Railroad Commission of Louisiana*, 232 U. S. 338, 339;
*Washington Securities Company* v. *United States*, 234 U. S.
76, 78; *Gilson* v. *United States*, 234 U. S. 380, 383. The
concurrent decisions of the courts upon the establishment
of a trust as a question of fact will be followed unless shown
to be clearly erroneous. *Brainard* v. *Buck*, 184 U. S. 99.

The various defenses urged in the court below and in-
volved in the points argued in this court for the appellants
must be considered in view of this finding of fact as to the
nature of the transfer by Baker, as receiver, to Simpson.

That the secret arrangement between Baker and Simp-
son was fraudulent and a gross breach of the receiver's duty
is too plain to require detailed consideration. *Michoud* v.
*Girod*, 4 How. 503, 555; *Magruder* v. *Drury*, 235 U. S. 106,
119.

It is urged that the contract of purchase was *ultra vires*
the corporate powers of the bank. The Court of Appeals,
in deciding this point, referred to the decisions of this court
which have held that objections to the passing of title in

conveyances to National Banks, although made in excess of any legal authority given the bank by the law, can only be made by the Government in a direct proceeding, and will not defeat the vesting of the title in the bank when it takes a conveyance in good faith for a valuable consideration. *National Bank* v. *Matthews,* 98 U. S. 621; *National Bank* v. *Whitney,* 103 U. S. 99; *Reynolds* v. *Crawfordsville First National Bank,* 112 U. S. 405; *Thompson* v. *Saint Nicholas National Bank,* 146 U. S. 240; *Schuyler National Bank* v. *Gadsden,* 191 U. S. 451.

But without questioning the correctness of this conclusion, we are of opinion that the authority of the bank to make this purchase, or of the Comptroller to approve of it, or of the court to order the sale of this asset upon the petition of Baker, as receiver, need not necessarily be considered in determining the right to recover in this proceeding.

Upon the plainest principles governing the relation of the parties here, in view of the finding that there was a secret trust in Baker's favor in the transfer to Simpson, Baker could not be heard to question the authority by which he acquired the property ostensibly for the benefit of his trust, but in reality for himself in breach of his trust. To sanction this would be to permit Baker to take advantage of his own wrong. It is not for him to say that he can acquire title in fraud of his trust because the bank could not legally acquire it, or the Comptroller approve or the court authorize, its sale. As the facts are found, Baker assumed to act upon the understanding that the bank owned the contract of purchase and under an order invoked by him he undertook to sell it for the benefit of the trust, but in reality conveyed it to one who secretly held it for him. Under such circumstances, the trustee can take nothing by his wrongful act and can be compelled to restore the property to the authorized representative of the trust estate.

Plaintiff relies greatly upon *Case* v. *Kelly*, 133 U. S. 21, where certain officers of a railroad had procured conveyances of lands intended to be used in the construction of the road and had taken title to themselves personally, and the railroad was seeking to recover the lands although forbidden by its charter to take and hold title to such lands. In this case, Mr. Justice Miller, speaking for the court said:

"We need not stop here to inquire whether this company can hold title to lands, which it is impliedly forbidden to do by its charter, because the case before us is not one in which the title to the lands in question has ever been vested in the railroad company, or attempted to be so vested. The railroad company is plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title and to own such lands, and the question here is, not whether the courts would deprive it of such lands if they had been conveyed to it, but whether they will aid it to violate the law and obtain a title which it has no power to hold. We think the questions are very different ones, and that while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids."

But the present case is not so. Here the State has parted with its title, and made the contract to convey to the bank at the instance of the receiver who now seeks to hold the title for his own benefit in breach of his trust.

As to the defense of laches, both courts below found that the facts show entire want of knowledge on the part of the present plaintiff or his predecessor in office of the secret arrangement by which Baker acquired the title to

the contract of purchase. Until knowledge of this fraudulent transaction, or facts equivalent thereto, was brought home to those authorized to act, there could be no laches in the failure to prosecute the suit.

Nor do we find merit in the contention that the seven-year statute of limitations (Remington & Ballinger's Annotated Codes and Statutes of Washington, § 789), in favor of persons in the actual and notorious possession of lands under claim of title in good faith, has any application here. Under the facts found Baker does not come within the class protected by this statute.

Other points are urged but it is enough to say that we find no error in the decree of the Circuit Court of Appeals, and it is

*Affirmed.*