**WINGET v. ROCKWOOD et al.**

No. 9765.

Circuit Court of Appeals, Eighth Circuit.

Feb. 10, 1934.

R. H. Fryberger, of Minneapolis, Minn. (John N. Ohman, of Minneapolis, Minn., on the brief), for appellant.

C. J. Rockwood and Loring M. Staples, both of Minneapolis, Minn. (M. B. Mitchell, Claude G. Krause, and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

The appellant, as plaintiff below, brought this suit in equity by which she sought to cancel and rescind her contract transferring to the defendant W. B. Foshay 1,250 shares of the common stock of the Winget Kickernick Company, which she alleges was secured from her without consideration, through fraud, duress, and undue influence.

The parties will be referred to as they appeared below.

It is alleged in the bill of complaint that the defendants E. C. Warner and W. B. Foshay, conspiring together, coerced plaintiff to enter into the contract by which she transferred title to this stock. Defendants interposed a motion to dismiss the bill of complaint on the grounds that: (1) It does not state facts sufficient to constitute a cause of action; (2) the action is barred by the statute of limitations, having been commenced more than six years after the cause of action accrued; (3) plaintiff's cause of action is barred by her laches. The court sustained this motion and entered decree dismissing the bill of complaint, and from this decree plaintiff has appealed.

The bill of complaint is quite long, covering, with the exhibits attached and made part of it, thirty-one pages of the printed record. It is verbose and sometimes indefinite in its allegations. The allegations of major importance may be summarized as follows:

The Winget Kickernick Company was a Minnesota corporation engaged in the manufacture and sale of wearing apparel. Plaintiff and her husband had built up its business, and for some years prior to December, 1924, it was controlled by them. In 1922, the company, being in need of funds, entered into a contract with the defendant E. C. Warner Company, which was owned and controlled by E. C. Warner, for its financing for a period of three years; and an agreement was entered into between the Winget Kickernick Company and the Warner Company, which provided that the Warner Company would assist the Winget Company by guaranteeing payment of its promissory notes not in excess of $50,000, and would give the Winget Company financial advice. The Winget Company was to pay not less than $5,000 a year for the guarantee and services to be rendered under this contract. It was not, however, intended that the contract should be carried out as written, but it was intended that loans should be made direct by Warner or the Warner Company to the Winget Company; the contract being a mere cover for usury.

Warner advanced funds from time to time approximating $90,000, for the use of which, in the form of interest or bonus, the Winget Company had paid up to December 31, 1924, $21,346.18. Up to that time Warner had encouraged the Winget Company to borrow these funds, and at no time intimated or warned it that further loans would be denied, or that immediate payment of the loan would be demanded. Plaintiff did not know that the loan was usurious until the month of November, 1932, and prior to that time believed that payment could legally be enforced. It had adopted no program for refinancing this indebtedness, but had entered upon a plan of extending and enlarging its business, had carried out an advertising program, and incurred obligations on open account at wholesale houses aggregating many thousand dollars. It was necessary, for the welfare of

the business, to maintain its credit, and any action commenced against it would have impaired its credit, prompted demands for immediate payment of its accounts due wholesale houses, and seriously jeopardized its affairs, all of which conditions were known to the defendants Foshay, Warner, and their companies.

About the 1st of December, 1924, the Winget Company being then indebted to the Warner Company for money loaned in the amount of approximately $90,000, that company, without previous notice, demanded immediate payment, refusing further loans, and threatening immediate suit. The Winget Company had no reason to anticipate that the loan would be called and was not prepared to meet it. The defendants Foshay and Warner entered into a conspiracy to deprive plaintiff of her property through threats, intimidation, duress, and coercion, and it was prearranged between them that W. B. Foshay, acting as agent for said named defendants, would exact the transfer of plaintiff's stock as set out in the complaint.

Following the demands for immediate payment and threats of suit, plaintiff, the Winget Company, and the defendant Foshay entered into negotiations for the refinancing of the loan. The Foshay Company became the Winget Company's fiscal agent to sell its Gold Notes up to $90,000, for which it was to receive a 10 per cent. commission. Foshay, fully informed of the indebtedness to the Warner Company and the threatened loss to plaintiff and her husband as the owners of the stock of that company, after entering into a contract on behalf of the Foshay Company to refinance the Winget Company by sale of its notes, told plaintiff that the Foshay Company, of which he was president, would not sell the notes unless she transferred to him 1,250 shares of her stock, which would give him control of the Winget Company; and he also told her that if she refused, Warner would ruin the company and her stock would become worthless. She complied with his request and transferred the stock to Foshay. He retained one-half of it, and transferred the balance to Warner, but not on the books of the company; the transfer being concealed from plaintiff so that she did not learn thereof until November, 1929. The scheme which induced her to part with this stock was a conspiracy between Foshay and Warner, acting in behalf of themselves and their companies, to obtain control of the Winget Company.

By the terms of the written contract by which the Winget Company employed the W. B. Foshay Company as its financial agent, it was provided that the Foshay Company agree to use its best efforts to sell the notes. The contract was executed on behalf of the W. B. Foshay Company by W. B. Foshay, its president, and by its secretary. In inducing plaintiff to execute the contract for transfer of her stock to Foshay, it is alleged in the complaint that Foshay, in furtherance of a conspiracy between himself and defendant Warner, "well knowing the lack of knowledge of plaintiff in business matters of such character, then and there threatened and stated to plaintiff that unless plaintiff's stock were transferred as he demanded, his company would not undertake to and would not sell the notes, and that in the event of the failure to so refinance the Winget Company 'it was through'; that 'it was sunk'; that 'it could never finance itself'; that it was financially ruined; that said E. C. Warner Company would immediately enforce payment of said indebtedness unless immediately paid; that neither plaintiff nor her agent knew of said conspiracy, nor were they acquainted with manner and means of financing corporations; that neither said corporation nor plaintiff knew of anywhere else to look to secure financing of said Winget Kickernick Company; that they were in a helpless condition to save plaintiff's investment in said stock and were in great financial and mental distress, all of which said W. B. Foshay and said W. B. Foshay Company, and said E. C. Warner then and there well knew"; that Foshay, taking advantage of plaintiff's helpless condition to accomplish the purpose of the conspiracy between himself and Warner, demanded the transfer of the Winget stock, threatening that otherwise his company would not sell nor attempt to sell said notes; that the demand was unconscionable, inequitable, and unjust; and that solely by reason of the threats, intimidation, duress, fraud, coercion, and the fear then and there entertained by plaintiff, and the belief that said threats and statements were true, she, without any consideration, caused the stock to be transferred. The stock so transferred was of the value of $135 per share.

The bill then alleges that the signing of this contract, and the transfer of the stock pursuant thereto, were not her free act and deed, but that she was deprived of her free will, and placed in position where she was coerced to comply with this unconscionable demand; that the coercion, duress, intimidation, and fraud continued uninterrupted up to the time of the commencement of the action; that Foshay and his company, with the

knowledge of Warner and his company, caused Foshay and his associates to be elected to the board of directors of the Winget Company ousting plaintiff from control of the affairs of the company; that although one-half of this stock was at once secretly transferred by Foshay to Warner, it was not transferred on the books of the company until after the Foshay Company went into the hands of a receiver, and plaintiff knew nothing of this transfer to Warner; that at one time she made inquiry concerning the affairs of the Winget Company and of her stock, and was told by an attorney representing W. B. Foshay Company directly and the other defendants indirectly that "she had better keep out of this"; that Foshay falsely and fraudulently represented to her that the election of himself and those under his control as directors and the removal of plaintiff as president and director, was necessary to further preserve the financial standing of the Winget Company in order to protect the note holders, and that unless their position was maintained as stockholders and officers, the Winget Company would again be financially involved with its note holders; that following the employment of the Foshay Company to refinance the Winget Company, W. B. Foshay and the Foshay Company posed and acted as the agent of plaintiff and the Winget Company; that plaintiff had only a limited knowledge of such matters of finance, while W. B. Foshay, E. C. Warner, and their companies, had had extensive experience in financial matters.

Title to 625 shares of this stock was in the W. B. Foshay Company when that company went into the hands of a receiver, and is now held by the defendant C. J. Rockwood, receiver.

There are three causes of action set forth in the complaint, the first, for the recovery of the stock, the second and third to recover dividends paid the defendants while they held the stock.

In sustaining defendants' motion to dismiss the bill of complaint, the lower court expressed doubt as to whether the demand by Warner for the payment of the usurious loan, and the threat of suit, plus the threats and predictions of Foshay, would constitute duress or coercion of the plaintiff, even though there was collusion between Warner and Foshay, but said that: "I am not prepared to say, however, that an arrangement whereby a banker calls a loan of a corporation in distress for the sole purpose of enabling a broker to obtain a commission and get control of the corporation from its stockholders, upon an understanding between the banker and the broker that they will divide their ill-gotten gains, would not give rise to a cause of action. If it were not for the long delay in bringing this suit, I should hesitate to dispose of it upon a motion to dismiss."

This motion to dismiss, under Equity Rule 29 (28 USCA § 723), is in the nature of a general demurrer. All the well-pleaded facts are, for the purpose of this motion, taken as true. A suit should not ordinarily be disposed of on such a motion unless it clearly appears from the allegations of the bill that it must ultimately, upon final hearing, be dismissed. To warrant such dismissal, it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated. This court in Anschl v. Puritan Pharmaceutical Co., 61 F.(2d) 131, 133, speaking through Judge John B. Sanborn, said: "Since such a motion to dismiss has taken the place of a demurrer, it is elementary that it admits all material facts well pleaded in the complaint, that only defenses in point of law appearing upon the face of the complaint may be considered, and that, unless it is clear that, taking the allegations to be true, no cause of action in equity is stated, the motion should be denied."

That rule of procedure should be followed which will be most likely to result in justice between the parties, and, generally speaking, that result is more likely to be attained by leaving the merits of the cause to be disposed of after answer and the submission of proof, than by attempting to deal with the merits on motion to dismiss the bill.

Under the ancient common-law rule, legal duress existed only where there was such a threat of danger as was deemed sufficient to deprive a "constant and courageous" man of his free will. Under this doctrine the resisting power which every person was bound to exercise for his own protection was measured not by the standard of the individual affected, but by the standard of a man of courage. This rule was later modified to the extent that the standard was changed from that of a "constant and courageous" man to that of a person of "ordinary firmness"; but in these modern and less heroic days, the standard of resistance by which to test the alleged wrongful acts of duress and coercion has been further modified and softened. The trend of modern authority is to the effect that a contract obtained by so oppressing a person by threats as to deprive him of the free

exercise of his will may be voided on the ground of duress. What constitutes duress is a matter of law, but whether duress exists in a particular transaction is usually a matter of fact. Meyer v. Guardian Trust Co. (C. C. A. 8) 296 F. 789, 35 A. L. R. 856. There is no legal standard of resistance with which the victim must comply at the peril of being remediless for a wrong done, and no general rule as to the sufficiency of facts to produce duress. The question in each case is whether the person so acted upon, by threats of the person claiming the benefit of the contract, was bereft of the quality of mind essential to the making of a contract, and whether the contract was thereby obtained. In other words, duress is not to be tested by the character of the threats, but rather by the effect produced thereby on the mind of the victim. The means used, the age, sex, state of health, and mental characteristics of the victim are all evidentiary, but the ultimate fact in issue is whether such person was bereft of the free exercise of his will power. International Harvester Co. v. Voboril (C. C. A. 8) 187 F. 973; Lipman, Wolfe & Co. v. Phœnix Assur. Co. (C. C. A. 9) 258 F. 544; Adams v. Irving Natl. Bank, 116 N. Y. 606, 23 N. E. 7, 6 L. R. A. 491, 15 Am. St. Rep. 447; Illinois Merchants' Trust Co. v. Harvey, 335 Ill. 284, 167 N. E. 69; Beard v. Beard, 173 Ky. 131, 190 S. W. 703, Ann. Cas. 1918C, 832; Galusha v. Sherman, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417; Welch v. Beeching, 193 Mich. 338, 159 N. W. 486; Nebraska Mutual Bond Ass'n v. Klee, 70 Neb. 383, 97 N. W. 476.

In the instant case it is alleged, and we must accept the allegation as true, that the defendants Warner and Foshay, and their companies, conspired to create a condition of financial jeopardy. Loans were freely extended to the Winget Company, and its officers were encouraged to embark upon plans of expansion, and then, without warning, these large loans were called and immediate payment demanded. Under these circumstances, the conspirator Foshay entered upon the scene. Plaintiff and her company were not financial wizards. They had had no training or experience in grappling with or solving such financial problems or situations as confronted them. In this predicament they employed Foshay as a captain of finance, and after he had executed for his company a contract under which his company undertook the sale of the Winget Company's notes, he then began a process of intimidation and threats of financial calamity and disaster, and as a climax extracted from plaintiff this written contract through which she turned over to him as his property 1,250 shares of the stock of the Winget Company, of the value of $135 per share, in consideration for which he agreed that he would have his company fulfil its contract. Under the original contract his company was to receive 10 per cent. of the face of the notes sold, so that for performing these services his company was to receive $9,-000 in cash, and he received this stock of the value of $168,750. When he entered into the contract for the stock, he was already obligated to sell these notes, or at least to use his best endeavor so to do. He was the agent of the plaintiff for that purpose, and she had a right to expect fair dealings at his hand, and that he would faithfully represent her in carrying out his company's contract.

It is suggested by counsel that these contracts were one transaction, but the record does not sustain that contention. The second contract was certainly executed after the first, because it refers to the first; in fact, the first contract is the subject matter of the second contract. It is observed too that the second contract was not acknowledged, although the first one was, and there is certainly nothing in the pleadings to warrant the conclusion that the contracts were one transaction. The parties were, therefore, at the time of the execution of the second contract, occupying a relation of confidence, and Foshay was not at liberty to act "at arm's length." He was the adviser of the Winget Company and the plaintiff, and yet it turns out that at that time he was representing Warner who had an interest adverse to that of the plaintiff. It was Foshay's duty not to represent an adverse interest, either of himself or of a third party, without fully and completely informing his principal of the dual and conflicting relationship. To be secretly acting for the benefit of an adverse party, while ostensibly acting for one of the parties, is a fraud upon the latter, and a breach of public morals which is not permitted. Ralston v. Turpin, 129 U. S. 663, 9 S. Ct. 420, 32 L. Ed. 747; Mastin v. Noble (C. C. A. 8) 157 F. 506; Johnson v. Umsted (C. C. A. 8) 64 F.(2d) 316; Trice v. Comstock (C. C. A. 8) 121 F. 620, 61 L. R. A. 176; Parkerson v. Borst (C. C. A. 5) 264 F. 761; Ferguson v. Gooch, 94 Va. 1, 26 S. E. 397, 40 L. R. A. 234; Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149, 150, 48 A. L. R. 913.

The Supreme Court of Minnesota, reaffirming the doctrine that a person cannot serve two masters, and holding that the contract secured under such circumstances may be rescinded, said: "Rescission is his absolute

right. Especially should this principle be applied without hesitation when, as here, relief is claimed against the instigator of the double agency who devised it for the very purpose of deceiving a complainant to enter a contract which such instigator knew could not have been induced but for the subterfuge to which he resorted."

The contract was so unfair and unconscionable as to shock the conscience of a court of equity. It gave Foshay and his company over $177,000 in money and property for the service of selling $90,000 worth of notes. Plaintiff says this contract was extracted from her through duress, coercion, threats, intimidation, and undue influence. The test, as we have observed, is what was the condition of her mind as the result of the threats, coercion, intimidation, and undue influence. The condition of her mind is, therefore, a fact which is alleged in the complaint and admitted by the motion.

In 2 Pomeroy's Equity Jurisprudence (3d Ed.) § 948, the author says: "Whenever one person is in the power of another, so that a free exercise of his judgment and will would be impossible, or even difficult, and whenever a person is in pecuniary necessity and distress, so that he would be likely to make any undue sacrifice, and advantage is taken of such condition to obtain from him a conveyance or contract which is unfair, made upon an inadequate consideration, and the like, even though there be no actual duress or threats, equity may relieve defensively or affirmatively."

In 1 Story's Equity Jurisprudence (14th Ed.) § 339, it is said: "Circumstances also of extreme necessity and distress of the parties, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it."

In 13 C. J., at page 409, it is said: "Where one party has taken advantage of another's necessities and distress to obtain an unfair advantage over him, and the latter, owing to his condition, has incumbered himself with a heavy liability or an onerous obligation for the sake of a small or inadequate present gain, equity will relieve him. So agreements between lender and borrower are closely scrutinized, because they are not always at arm's length."

See, also, 1 Elliott on Contracts, § 152; Wheeler v. Smith, 9 How. 55, 13 L. Ed. 44; Snyder v. Rosenbaum, 215 U. S. 261, 30 S. Ct. 73, 54 L. Ed. 186; Ralston v. Turpin, 129 U. S. 663, 9 S. Ct. 420, 425, 32 L. Ed. 747; International Harvester Co. v. Voboril (C. C. A. 8) 187 F. 973; Lipman, Wolfe & Co. v. Phœnix Assur. Co. (C. C. A. 9) 258 F. 544; Butler v. Duncan, 47 Mich. 94, 10 N. W. 123, 41 Am. Rep. 711; Carr v. Sacramento Clay Products Co., 35 Cal. App. 439, 170 P. 446; Welch v. Beeching, 193 Mich. 338, 159 N. W. 486; Galusha v. Sherman, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417.

As has already been observed, there was no consideration for this contract by which this stock was transferred to Foshay. Standing alone, inadequacy of consideration is not necessarily evidence of fraud or undue influence, but it is a material element where the party was under the influence of another, and it is doubtful whether he was a free agent. Accepting as true the allegations of the complaint, we are of the view that it is fairly clear that these conspirators took an undue advantage of the plaintiff's situation and circumstances and obtained from her an unfair and unconscionable contract. It must be borne in mind that Foshay was plaintiff's agent, and as said by the Supreme Court in Ralston v. Turpin, supra: "All transactions between them (principal and agent) whereby the agent derives advantages beyond legitimate compensation for his services will be closely examined by courts of equity, and set aside if there be any ground to suppose that he has abused the confidence reposed in him."

The contract by which Foshay deprived the plaintiff of this stock is such as to shock the conscience of the man of the street and the right-thinking business man.

We are dealing now only with the sufficiency of the pleadings, and not with the merits, and we are of the opinion that, under the allegations of the complaint, competent evidence may be produced which will entitle plaintiff to the relief demanded, unless, as contended by defendants, she is barred by the statute of limitations, or precluded by her laches.

Section 9191, Gen. St. Minnesota 1923, provides that the following actions shall be commenced within six years: (1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly implied; (2) for taking, detaining, or injuring personal property, including actions for the specific recovery thereof; (3) for relief on the ground of fraud, in which case the cause of action shall not be deemed

to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

It is observed that the statute provides that for relief on the ground of fraud, the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. Under the allegations of the complaint in the instant case, it cannot be said that plaintiff discovered or should have realized the nature of the fraud before November 6, 1929, when she learned of the concealment of the dual role of Foshay. The suit was commenced within six years from that date.

▉ It remains to consider whether it can be said from the bare bones of the complaint, that she is barred by her laches.

If, as alleged in the complaint, the loan was usurious, it was, under the Minnesota statute, a void claim; but when the transactions of December, 1924, took place, she was told both by Warner and Foshay, who were conspiring to defraud her of her property, that this loan not only could be but would be immediately enforced. She learned of Warner's connection with the transaction in 1929, and up to that time she did not know that Foshay had in his transactions with her been 'representing adverse interests. It is urged that plaintiff cannot plead ignorance of the law as a basis for her right to recover, but in the instant case, there was combined with an ignorance of the law an ignorance of certain important elements of fact. Courts, while recognizing the law that ignorance of the law is no excuse for failure to act, are ready "and even astute to seize upon any element of fact as sufficient in connection with mistake of law to justify the granting of relief." Equity will even relieve against a mistake of law when the surrounding facts raise an independent equity, and where there has been a mistake of law by one party induced by misrepresentations, deceit, or undue influence on the part of the other, or where advantage has been taken in any way of one's ignorance of the law to mislead him or her into a relation of trust and confidence which has been abused, and this is especially true if the mistake inures to the advantage of the person whose advice is taken. Order of United Commercial Travelers v. McAdam (C. C. A. 8) 125 F. 358; Tompkins v. Hollister, 60 Mich. 470, 27 N. W. 651; Schuttler v. Brandfass, 41 W. Va. 201, 23 S. E. 808.

▉ Federal courts sitting in equity are not bound by state statutes of limitations, though they are usually guided by them. If unusual conditions or extraordinary circumstances, however, make it inequitable to forbid the maintenance of a suit after a longer period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the case in accordance with the equities. Johnson v. Umsted (C. C. A. 8) 64 F.(2d) 316; Foshay Trust & Savings Bank v. Public Utilities Consol. Corp. (C. C. A. 8) 64 F.(2d) 665; Des Moines Terminal Co. v. Des Moines Union Ry. Co. (C. C. A. 8) 52 F.(2d) 616, 630; Spiller v. St. Louis & S. F. R. Co. (C. C. A. 8) 14 F.(2d) 284; Nave-McCord Mercantile Co. v. Ranney (C. C. A. 8) 29 F.(2d) 383; McWilliams v. Excelsior Coal Co. (C. C. A. 8) 298 F. 884; Baker v. Schofield, 243 U. S. 114, 37 S. Ct. 333, 61 L. Ed. 626.

In Des Moines Terminal Co. v. Des Moines Union Ry. Co., supra, in an opinion by Judge Kenyon, it is said: "Laches is an inexcusable delay in asserting rights. Mere lapse of time does not constitute laches. To await an unreasonable time before seeking relief from a known wrong may amount to laches. It is to be determined by consideration of justice, and that is dependent upon the circumstances of each particular case."

The rule in equity as to the defense of laches is similar to the Minnesota statute of limitations in that time does not begin to run until knowledge of the facts constituting the alleged fraud are brought home to the aggrieved party. The allegations of the complaint are to the effect that the alleged fraud and conspiracy were not discovered by plaintiff until November, 1929, and no facts are alleged in the amended complaint which would necessarily charge the plaintiff with prior knowledge thereof, or make it improper and inequitable to permit her to maintain this action. Nothing appears except the mere lapse of time. It is suggested that the rights of creditors have intervened, but the receiver has no greater rights than the Foshay Company. There was a concerted action to conceal the actual facts from plaintiff. The transfer was omitted from the books of the company, and Foshay was permitted to represent that he was the owner of all the stock. He collected the dividends on all the stock, though accounting to Warner for one-half of them, and it was only the receivership proceedings which forced Warner to disclose the fact that he was the owner of half of this stock. After stripping plaintiff of practically all her interest in the company, they excluded her from taking any part in its management, and from any knowledge of its financial affairs. There was also misrepresentation to the effect that

if the Foshay interests were not permitted to control the management of the company, the purchasers of the notes would become discontented and embarrass the company. The remainder of plaintiff's stock was covered by an escrow and subject to loss of voting rights in the event of a default in payment of the notes. She was effectively excluded from the company, and it is pleaded in the complaint that the duress continued, and if so, her cause of action did not accrue until after the restraint of her voluntary will was removed. The suit was in fact commenced in November, 1932, three years from the date the Warner stock was transferred on the books of the company, within a month from the time she was advised that the Warner loan was usurious, within three years after the Foshay Company was placed in the hands of a receiver, within three years from the time plaintiff learned of the conspiracy, within three years from the time W. B. Foshay ceased to control the Winget Company and plaintiff was reinstated on the board of directors, and immediately after she learned that the defendants were attempting to sell the stock to third parties.

There is no change of conditions that would render it inequitable to enforce the right here asserted by plaintiff. The defense of laches cannot be invoked to defeat justice, and should be applied only where the enforcement of the right asserted will work injustice. By this we do not mean that the plea of laches may not be sustained by evidence, but we are of the opinion that the allegations of the complaint do not disclose such laches as will preclude recovery.

The judgment appealed from is reversed, and the cause remanded to the lower court for further proceedings not inconsistent herewith.