**PRUDENTIAL INS. CO. OF AMERICA v.
OSADCHY et al.**

No. 1451.

District Court, W. D. Missouri, W. D.

Feb. 14, 1944.

Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., for plaintiff.

Charno & Drummond, of Kansas City, Mo., for defendant George H. Charno, trustee.

James P. Aylward, Ralph M. Russell, and Francis M. Cook, all of Kansas City, Mo., for defendant Janette Osadchy.

REEVES, District Judge.

While the pleadings in this case standing alone appear to make complex issues, yet the evidence has so narrowed and limited them as to present a very simple question. That question is whether the defendant Janette Osadchy voluntarily entered into a trust agreement on October 9, 1942, or whether she was influenced to do so by duress and coercion.

She, together with her minor daughter, Rochelle, were named as beneficiaries in a policy issued by the plaintiff upon the life of her husband, now deceased. The policy was dated August 21, 1942, in the sum of $5,000, and made payable in monthly installments upon the death of the assured. The husband died on September 29, 1942, a little more than one month after the policy was issued. One of the brothers of the deceased claimed that the proceeds of the policy were liable for the debts of the insured. The insured had scarcely been buried until there was an insistence by this brother that the proceeds of the policy must be used to discharge the obligations of the deceased or failure thus to apply the proceeds would result in an interference with the payment by the plaintiff to the beneficiaries of the benefits promised in the policy. Such insistence amounted to a threat that the benefits would not be paid to the beneficiaries unless so applied. These threats were communicated to the defendant beneficiary. Although advised that such benefits were not legally liable for the husband's debts, yet nevertheless

said beneficiary was induced to enter into a so-called trust agreement requiring the application of the proceeds to the payment of the debts of the insured. Because of such coercion and threats the said trust agreement was executed on the 9th of October, 1942, exactly ten days after the death of the husband. The evidence showed that the widow and beneficiary was nervous and hysterical during the negotiation and that her relations with the brother who insisted upon the use of the proceeds of the policy to pay the debts of her husband were anything but cordial. The beneficiary was impressed in her several conversations concerning said policy that it was liable to be voided and that in the most favorable light she would experience difficulty and trouble in collecting the benefits unless she agreed to the trust demanded by her brother-in-law. All of the conversations took place while she was yet in actual mourning over the recent death of her husband and while the customs of her religion imposed upon her the duty to observe religious formalities and rituals.

Each and every witness testified that the widow and beneficiary was under high nervous tension at each and every conference had concerning the proposed trust agreement and was in such a state of nervous tension at the time she signed it. She was supported in her testimony by the evidence of the trustee who said that he himself was doubtful whether the beneficiary under the most favorable circumstances might not experience difficulty in collecting the benefits of the policy. Thus motivated by the judgment of counsel, and with the constant threat of interference by creditors, the widow and beneficiary was induced against her will to enter into the agreement. It is her contention upon these facts that it was not a responsible act and the trust agreement ought to be avoided.

Other questions were raised by her counsel. These will be noticed and discussed.

■ 1. The policy provided that the benefits promised should be paid to the widow at the rate of $100 per month. In case of her death before the final installments were paid, her daughter, Rochelle, should receive such further installments. Section 5850, R.S.Mo.1939, Mo. R.S.A., specifically provides that where the benefits of an insurance policy are made payable to the wife of the insured such benefits "shall inure to her separate benefit, independently of the creditors, executors and administrators of the husband." The premiums on the policy were not large enough to bring it within any exception of the statute.

It is obvious that the State of Missouri has adopted a policy to protect the widow as a beneficiary from creditors and even from the legal representative of the husband. Under the law immediately upon the decease of the husband the benefits of the policy vested absolutely and entirely in the widow during her lifetime. Upon her death any remaining benefits then became subject to the claims of the minor daughter. Any provision that the widow might make for the application of the proceeds to the payment of creditors of the husband would, therefore, be entirely voluntary and without consideration. Moreover, a serious question arises whether the widow could, with the uncertainties of life, pledge the benefits of the policy since they were liable at any time to inure to her minor daughter.

■ 2. It may be questioned whether the beneficiary did in fact transfer her interests in the policy to the trustee named in the so-called trust agreement. The trust agreement provided for marshalling the assets of her deceased husband and the insurance policy in suit was named as a part of the assets to be used by the trustee. Upon collection of the estate, whether insurance or otherwise, the assets were to be converted into cash and applied to the discharge of her husband's debts. The trust agreement is defective because it lacks clarity in that regard.

■ 3. It is the contention of the trustee and his able counsel that the trust agreement having been executed stood as an express trust and the trustor and settlor could not recede therefrom. In endeavoring to construe the so-called trust agreement as an express trust it should be kept in mind that the settlor or trustor, the wife and beneficiary, was hostile to the beneficiaries of the trust. It was most unusual for one in the circumstances of this alleged trustor willingly to set up a trust fund where the attitude of mind was one of unfriendliness, if not outright hostility to the beneficiaries of the so-called trust.

This discussion probably would be more appropriate on the question of duress under the following paragraph.

4. According to the undisputed evidence the defendant wife was highly nervous at the time of her husband's death and was at all times up to the time the so-called trust agreement was signed and even thereafter.

She testified clearly and unqualifiedly that immediately after her husband's death she was advised by her brother-in-law, through her father, that unless the proceeds of the policy were made available for the payment of her husband's debts there would be an interference with the collection on the policy and that she stood to lose all. This thought was impressed upon her at all times, even though she was advised by counsel that the proceeds were not legally liable for her husband's debts.

■■ The general aspect of the situation should not be overlooked: The widow and beneficiary, being of a nervous temperament, and at the very moment of her husband's death and for a period of ten days thereafter, was pursued with constant admonitions and threats that a benefit sorely needed by her would be taken away from her in toto, or would not be paid to her, unless in advance she yielded a large part of it over to her deceased husband's creditors. The testimony on both sides indicated that that was the course of action. She was inexperienced on matters of that kind. She, a distraught and bereft woman, stood alone with several highly intelligent and experienced men insisting upon an invasion of her rights with an undercurrent of threats that she should suffer if she failed to conform to their demands. Her action in signing the trust agreement, if such trust agreement be a valid one, was not a voluntary act. The rule is well stated by the Court of Appeals, this Circuit, in Winget v. Rockwood, 69 F.2d 326, loc. cit. 330: "The means used, the age, sex, state of health, and mental characteristics of the victim are all evidentiary" on the question of duress. The court further said in that case: (69 F.2d loc. cit. 331) in quoting from 1 Story's Equity Jurisprudence, 14th Edition, Section 339:

" 'Circumstances also of extreme necessity and distress of the parties, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it.' "

The question of consideration was also discussed by the court, (69 F.2d loc. cit. 331):

"Standing alone, inadequacy of consideration is not necessarily evidence of fraud or undue influence, but it is a material element where the party was under the influence of another, and it is doubtful whether he was a free agent."

The cases cited by the trustee conform to the foregoing authorities. The evidence was overwhelming that Mrs. Osadchy was not a free agent at the time she entered into the alleged trust agreement.

5. The foregoing ruling will dispose of all other contentions in the case and of claims made by other parties. Under the statute the proceeds of the policy are not available to creditors. The beneficiary was not even liable to have the proceeds of the insurance policy used to pay the husband's funeral expenses.

■ The trustee claims that some allowance should be made to him for services performed. Such allowance should not be made out of the proceeds of the insurance policy. The court would be without jurisdiction to make allowance in any other way. According to the terms of the alleged trust agreement other property came into the hands of the trustee, or was available to him, being the property of the insured. The trustee should resort to such assets for his compensation.

Counsel for the named beneficiary may desire to prepare a journal entry, otherwise it will be prepared here in accordance with this memorandum.

I make the following findings of fact:

1. The defendant Janette Osadchy and her daughter, Rochelle Osadchy, were the beneficiaries named in a policy of insurance issued by the plaintiff upon the life of the husband and father of the said Janette Osadchy and Rochelle Osadchy in the sum of $5,000. Said policy bore date August 26, 1942, and the insured deceased on September 29, 1942. Said policy was payable upon proof of the death of the insured at the rate of $100 per month. Such payment was to continue for a limited period, first to the wife, and then upon her death to the daughter until the plaintiff (the insurer) had performed its obligations under the contract.

714

2. The plaintiff admitted its obligations under said contract of insurance and has paid into court for the benefit of rightful and lawful claimants the amount due under said policy and has asked for its discharge. It is agreed by counsel that counsel for the plaintiff is entitled to a fee ranging from $150 to $200.

3. At the time of the death of her husband, the defendant Janette Osadchy, in addition to the grief natural upon such bereavement, was highly nervous and suffered from nervous tension.

4. Immediately after her huband's death his relatives who were active for creditors of her deceased husband sought to impress upon her that unless the debts of her husband were paid out of the proceeds of the policy issued by the plaintiff the payment of said policy would be endangered and that the said Janette Osadchy stood to lose all the benefits promised in said policy. These suggestions and representations influenced the said Janette Osadchy with respect to said insurance and the so-called trust agreement.

5. The defendant Janette Osadchy was never motivated by any desire on her part to discharge the indebtedness of her husband out of benefits payable to her on account of said insurance. On the contrary, she was not agreeable to such an act of gratuity on her part nor was she financially able to make such a contribution.

6. That the defendant Janette Osadchy only consented to the use of benefits exclusively belonging to her and her minor daughter for the discharge of her husband's debts upon representations and suggestions that the entire amount would be withheld unless she so consented.

7. That the act of the defendant Janette Osadchy in signing the alleged trust agreement was not a voluntary act on her part but was one superinduced by the duress or threats and suggestions that she would imperil her own interest in the benefits to be paid unless she did so.

8. In all of the conferences with the said Janette Osadchy while she was yet in grief over the recent demise of her husband and while suffering from nervous tension, she was constantly impressed by all of those who participated in such conferences that there was a danger and probability that the plaintiff would resist the payment of its obligation under said policy whereas in truth and in fact there was no such danger or probability, but such representations and suggestions were made for the sole purpose of influencing the said Janette Osadchy against her will to sign the alleged trust agreement.

9. That the alleged trust agreement signed by the defendant Janette Osadchy was wholly without consideration and its execution was procured by misrepresentation of persons interested in behalf of creditors of her husband.

I state the following conclusions of law:

1. The alleged trust agreement signed by the defendant Janette Osadchy, not being her voluntary act, is voidable in law and should be avoided.

2. The alleged trust agreement is not a valid express trust for want of clarity.

3. The defendant Janette Osadchy is entitled to recover the benefits promised in the policy of insurance above mentioned and that the trustee and other defendants should take nothing.

4. The judgment of the court should be for the defendant Janette Osadchy.

5. The counsel for plaintiff is entitled to be paid as attorney's fees the sum of $175.

6. By the agreement of the parties the reporter of the court should be compensated out of the fund on deposit.