Argued October 9, affirmed November 1, 1961

## ESTABROOK ET AL *v.* KELLENBERGER ET AL

365 P. 2d 885

*Mark V. Weatherford,* Albany, argued the cause for appellants. With him on the briefs were Morley & Thomas, Lebanon and Weatherford & Thompson, Albany.

*Philip A. Levin,* Portland, argued the cause for respondents. With him on the brief were Bailey, Lezak, Swink & Gates, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

This was a group of twenty cases that were consolidated both for trial and appeal. The parties stipulated that the pleadings and all subsequent proceedings be treated as one case and that the determination of one case would decide all. The facts were identical as to each case. The trial court found for plaintiffs. Defendants' appeal from the decree entered. A brief statement of the facts will explain the issue to be decided.

Each plaintiff was the owner of one share of stock in defendant Linn Plywood Corporation. The corporation, as we will refer to it, was one of those organized and operated by the shareholder-employees as though it were a cooperative. Prior to April 1957, the corporation had experienced financial difficulties. On April 23, 1957, defendant Kellenberger was appointed receiver of the corporation by the circuit court of Linn county. In the year preceding the appointment of Kellenberger as receiver the corporation had suffered a loss in excess of $400,000. In the second year of defendants' operation of the corporation as receiver, it made a net profit in excess of $400,000.

After the receiver had been appointed some of the stockholders and other persons made some effort to buy the stock from the various stockholders. A total

of thirty-five shares of stock had been issued and were outstanding. Apparently no stockholder owned more than one share. One of these individuals who became interested in acquiring the stock was defendant Perse.

Perse was a stockholder and had been president of the corporation at the time the receiver was appointed. When he decided to attempt to buy the shares of the other stockholders he did not negotiate directly with them. Instead he retained an attorney in Albany to negotiate for him. The attorney was directed to buy options from the stockholders and not to reveal the identity of his principal. Throughout the negotiations that followed Perse remained a completely undisclosed principal. His reasons for remaining anonymous were not satisfactorily explained.

After the attorney had contacted some of the stockholders he learned that none of them were disposed to sell unless the same offer was made to all of them. At the same time another plywood company within the same area was also bidding for the stock. As a result of the competitive bidding the price was increased quite substantially over the original offers. In late April and early May of 1959 the attorney for Perse finally obtained an option from each of the stockholders. The options were identical. They were given to the attorney. He had thirty days in which to exercise the option. The purchase price fixed by the option was $11,000 for each share of stock. The total purchase price of all thirty-five shares was, therefore, $385,000.

The consideration paid for each option was $50. Perse had to borrow nearly all of the money which he provided to the attorney for the purpose of buying the options. That fact is mentioned to indicate the

complete inability of Perse to finance the exercise of the options to purchase the stock. There is evidence that he approached one man of substantial means to solicit financial aid and was refused. He claims, as does defendant, Kellenberger, that it was not until then that he first approached Kellenberger for financial assistance. However, both of them testified that during the time the negotiations for the options were in progress these two defendants had frequent if not daily conversations about the operation of the corporation's business. Kellenberger had previously loaned $1,000 in cash to Perse to enable the latter to pay for the options. Kellenberger testified that he did not ask and did not know what the $1,000 was to be used for.

At about the time the options from all of the stockholders had been obtained (there is some conflict as to the exact time) Perse testified that he approached Kellenberger for the first time to obtain his financial assistance. Kellenberger testified to the same effect. Kellenberger testified that he then arranged with defendant Citizens Bank of Albany to finance the transaction. The options were delivered to the bank and the stockholders notified that the options were to be exercised. Each stockholder was directed to take his or her share to the bank where payment was to be made. Each stockholder did as directed. All of the shares of stock were later endorsed to Kellenberger and his wife. Perse retained no interest in the transaction at all. Although Kellenberger testified that he would have permitted Perse to buy as many of the shares at the sales price, plus interest, as he could buy there was no evidence that Perse made any effort to do so. The only actual evidence is that Kellenberger became the buyer and

owner of all of the stock. He was the receiver during all of this time and remained so at the time of the trial of this case.

Another Albany attorney had been designated and, during all of the time mentioned, was acting as attorney for the receiver Kellenberger. At no time did Kellenberger advise that attorney, nor the attorney who had acted as the agent for Perse that he, Kellenberger, was the real purchaser of the shares of stock. Neither did Kellenberger notify the court. The first knowledge acquired by any of the interested persons, other than Perse and Kellenberger, of the true nature of the transaction came from a creditor of the corporation. In some manner, not disclosed by the record, this creditor heard rumors that Kellenberger had been the one who had bought the stock. The creditor was concerned. Thereafter, at a hearing before the court, an attorney for this creditor challenged Kellenberger to reveal his true interest. Kellenberger then admitted that he had been the buyer and was the owner of all of the stock. This was six months after the sale had been completed. There is some evidence that shortly prior to the court hearing just mentioned that the attorney for the receiver, in answer to an inquiry from the interested creditor, had written Kellenberger demanding a point-blank answer to the question. The record is not clear whether this attorney got the point-blank answer before it was made in open court.

In the interim between the date of sale and the courtroom disclosure of Kellenberger's role in the purchase of the stock, the plywood mill operated by the corporation was destroyed by fire. A total of something over $900,000 was realized on the insurance covering the property. The assets were thereby lique-

fied at considerable profit to the owner of the stock. How much profit is not accurately shown. There was certain disputed tax claims remaining to be paid and certain other obligations not detailed in the record.

■■ Immediately after it was learned that Kellenberger had been the purchaser, the former owners of the stock held a meeting. Twenty of them decided to and did file this suit to rescind the sale. In the trial that followed, considerable evidence was presented as to the true value of the corporation assets at the time of the negotiation for and purchase of the stock. The real question, however, evolves around the duty of the receiver.

In the opinion deciding the case filed by the trial judge, the late Richard Anderson, it was said:

"The court lays down this rule for its receivers: That no court appointed receiver may as an undisclosed principal purchase shares in the property which he is appointed to manage; that if he does so, the transaction is voidable at the option of the seller. The court sanctions no extrajudicial transactions whatsoever by receivers. The court holds that the fact of nondisclosure of self as principal is, itself, a material withholding of fact which is enough to make voidable the transaction. Any other rule would invite receivers to speculate."

We agree.

Although this is not a case in which a receiver secretly acquires property directly held by him as a receiver, the practical effect is exactly the same. When defendant Kellenberger secretly bought all of the shares of stock he became, for all practical purposes, the owner of every asset he was charged with administering. If this had been a secret sale of the actual assets, we think no court would sustain it. Clark on Re-

ceivers, 1959, 3d § 498, 811, *Baker v. Schofield,* 1917, 243 US 114, 37 S Ct 333, 61 L Ed 626. In *Mosser v. Darrow,* 1951, 341 US 267, 71 S Ct 680, 95 L Ed 927, 932, the court by Justice Jackson observed: "Equity tolerates in bankruptcy trustees no interest adverse to the trust. This is not because such interests are always corrupt but because they are always corrupting." Other language of that decision is pertinent to the case before us.

■ The rule must be and we hold that a receiver acts in a fiduciary capacity in respect to all persons who have any direct or indirect interest in the assets subject to the receiver's control. A breach of that fiduciary relationship, most particularly a secret and devious one, will not be tolerated. Restatement, Trusts 2d, § 170 and comments.

"Having in mind such cases as Crites, Inc., v. Prudential Co., 322 U.S. 408, 64 S.Ct. 1075, 1079, 88 L.Ed. 1356, and others cited below, we think the general principles applicable here are as follows: A receiver, as 'an officer or arm of the court,' is a trustee with the highest kind of fiduciary obligations. He owes a duty of strict impartiality, of 'undivided loyalty,' to all persons interested in the receivership estate, and must not 'dilute' that loyalty. He is 'bound to act fairly and openly with respect to every aspect of the proceedings before the court. * * * The court, as well as all the interested parties,' have 'the right to expect that all its officers,' including the receiver, will not 'fail to reveal any pertinent information or use their official position for their own profit or to further the interests of themselves or any associates." (Footnote omitted). *Phelan v. Middle States Oil Corporation,* 2d Cir., 1946, 154 F2d 978, 991.

Decree affirmed.