MEYERS, Appellant, v. RUSSELL et al., Respondents.

St. Louis Court of Appeals, April 2, 1907.

1. **LANDLORD AND TENANT: Damage from Defective Premises: Grantor and Grantee.** Where the mortgagor of real estate conveyed the same, reserving the right to control the rents of the property during the life of the mortgage for the benefit of the mortgagor and for the benefit of the mortgagee, and through his agent rented the premises to a tenant, he sustained the relation of landlord to the tenant and was a proper party in an action by such tenant for injuries to the latter caused by the defective condition of the premises.

2. ———: **Dangerous Premises: Liability for Injury.** Where there is anything, not easily discoverable on or about the premises rented, rendering such premises dangerous and the landlord has knowledge of such danger, it is his duty to notify the lessee, otherwise he is liable for an injury to the lessee caused by such dangerous condition.

3. ———: ———: ———: **Notice: Prima Facie Case.** In an action by a tenant against his landlord for personal injuries received on account of dangerous premises, where it was shown that the premises had been in a dangerous condition for a long time and the defendant had an agent appointed to keep them in repair, and such agent represented to the plaintiff that they were in good repair and the plaintiff was not at fault in failing to detect the unsafe condition, the plaintiff made out a prima facie case.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED (*with directions*).

*H. A. Yonge* for appellant.

*Andrew M. Sullivan* for respondent.

These allegations wholly fail to charge defendant with any duty or obligation to plaintiff to repair the premises. The obligation to repair must arise from an express contract alleged and proved; otherwise there can be no liability even, as between the owner as lessor and the tenant; much the less so as between one who is not the owner and the tenant. Ward v. Fagin, 101 Mo. 669; Peterson v. Smart, 70 Mo. 34; Little v. Macadaras, 29 Mo. App. 332. Even though the written appointment of Niesen as agent to rent and repair the premises for defendant Russell, was not revoked by the conveyance away of the property, and even though it was contemplated by the parties thereto, that Niesen should have the right to repair the premises for the benefit of third persons leasing them, at a time when Russell was no longer the owner; still, third persons, lessees, through Niesen, under such circumstances, could not claim any benefit from such contract either directly by suing for the direct breach thereof, or, *a fortiori*, indirctly by suing for the breach of a contract of lease made or attempted to be made thereunder, by Niesen as agent; for the reason that neither Russell nor Niesen owed any debt or duty to such third persons at the time of the making of said contract of appointment. Street & Johnson v. Goodale, Barger & Co., 77 Mo. App. 318; Harberg v. Arnold, 78 Mo. App. 237; Devers v. Howard, 144 Mo. 671; Ins. Co. v. Waterworks Co., 42 Mo. App. 118; Howsman v. Waterworks Co., 119 Mo. 304; Vrooman v. Turner, 69 N. Y. 280; St. Louis v. Von Phul, 133 Mo. 561; Lime & Cement Co. v. Wind, 86 Mo. App. 163; Townsend v. Rockham, 143 N. Y. 516; Gifford v. Corrigan, 117 N. Y. 257.

STATEMENT.—Omitting caption, the petition is as follows:

"Plaintiff for cause of action, states that, on the thirtieth day of December, 1897, defendant Charles S. Russell was the owner of the premises at No. 4154 to 4166 North Grand avenue, in the city of St. Louis, Mo., and on said date, negotiated a loan on said premises through defendant F. E. Niesen, as the agent of E. Carroll, and executed a deed of trust to the said E. Carroll thereon, to secure the payment of the said loan, and on said thirtieth day of December, 1897, the defendant made and entered into the following agreement, to-wit:

" 'This agreement, entered into this thirtieth day of December, 1897, by and between Charles S. Russell, of the city of St. Louis, party of the first part, and F. E. Niesen, of the same place, party of the second part, sets forth the following, to-wit: Whereas, the said Niesen has negotiated a loan on property belonging to the said Russell, known as premises No. 4154 to 4166, inclusive, North Grand avenue, and whereas it is to the mutual interest of the owner as well as the holder of the said mortgage, that said property be kept in constant repair, in order to realize the greatest possible amount of income from the same, the said Russell, with that end in view, hereby appoints the said Niesen his agent to manage said property, make all repairs, collect all rents, attend to insurance and do all other things and acts necessary to carry out this agreement, both in terms and spirit. All repairs and alterations exceeding the sum of $25.00 shall be subject, however, to the approval of said Russell.

"This agreement to continue during the full period of said loan.

"Signed December 30, 1897.

CHARLES S. RUSSELL.'

"That on the said thirtieth day of December, 1897, the defendant Charles S. Russell, after he had negoti-

ated said loan as aforesaid and executed his notes and deed of trust to the said E. Carroll to secure the payment of the same upon the aforesaid premises, and made and delivered the said agreement to defendant F. E. Niesen, sold and conveyed said premises to the following named persons, to-wit: Virginia Bent, Sallie Bent, a widow, Olive Bent, John B. Bent, Seddie Bent, Silas Bent, and Nannie Bent, all of Bowling Green, in the State of Kentucky.

"That by the terms of said deed of conveyance the grantees therein took said title to said premises and the same was conveyed subject to the said deed of trust, and the said grantees assumed the payment thereof as part purchase money, and said deed was also made, executed and delivered, subject to the said agreement made and entered into by and between the said defendants on said December 30, 1897, and said agreement is now in full force and effect, and the said defendants have had control of the said premises thereunder for the purposes therein mentioned, during all the time since it was executed, collecting the rents, leasing and controlling the same.

"That the said loan on said premises, as evidenced by said deed of trust is still unpaid and is a lien upon said premises, and the term for which said loan was made has not expired.

"That on the twenty-third day of September, 1904, plaintiff leased of defendants No. 4154A North Grand avenue in the city of St. Louis, Missouri, as a monthly tenant at the agreed price of twelve dollars per month, payable monthly in advance, and took possession and moved therein on the twenty-seventh day of September, 1904.

"That at said time there was a front and rear entrance to said premises by means of a wooden stairs leading thereto, which were on the second story of said building.

"That the back stairway lead to the back yard of said premises under the control of defendants, and was intended for the use of the tenants of defendants occupying the said second floor of said building.

"That on the twenty-ninth day of September, 1904, while plaintiff was walking down said back stairway, and while she was exercising ordinary care for her own safety, the said stairs broke, gave way, causing her to fall to the yard beneath, and to strike it with great force and violence, breaking her left shoulder, bruising and lacerating her right arm, causing it to become stiff and permanently disabled, and causing serious injuries to her right side, and also internal injuries, all of which injuries are permanent and lasting.

"That at said date it was the duty of defendants, by the terms and conditions of the verbal lease with plaintiff, to keep up and maintain said stairway in a good condition of repair.

"That for a long time prior to the happening of the injuries complained of and before the said premises were leased by plaintiff, the said back stairway had been out of repair and unsafe and dangerous, and defendants knew that the same were out of repair, unsafe and dangerous, or could have known the same by the exercise of ordinary care and prudence in time to have repaired the same and prevented the happening of the injuries to the plaintiff complained of herein, but carelessly and negligently permitted said back stairs to be and remain in an unsafe and dangerous condition, thereby directly causing the said injuries to plaintiff while she was exercising ordinary care and prudence for her own safety.

"That at said time plaintiff did not know that said stairs was unsafe or dangerous, and that the same was unfit for use.

"That in consequence of the injuries received by plaintiff as aforesaid, by means aforesaid, and in man-

ner aforesaid, plaintiff has sustained lasting and permanent injuries, suffered great pain both of body and mind, lost much valuable time, and been put to great expense for medicine and medical attendance in being treated for said injuries, to-wit: in the sum of two hundred dollars, to her damage in the sum of ten thousand dollars, for which she sues and prays judgment."

The answer is as follows:

"Come now Charles S. Russell and Frederick E. Niesen, defendants herein, and for answer to the petition herein, deny each and every allegation thereof.

"And further answering, defendants state that the injuries to plaintiff in the petition complained of were caused and occasioned by the plaintiff's own negligence and want of ordinary prudence and care, contributing directly thereto, in this, that the unsafe and dangerous condition of the alleged stairway was apparent to observation, at the time said accident occurred, as it had been prior thereto, and during the time the premises were occupied by the plaintiff; that during her said occupancy of the premises for several days, said stairway was frequently under her observation and the plaintiff could have known by the exercise of ordinary prudence and care that said stairway was dangerous and unfit for her use; that nevertheless the plaintiff undertook to use the stairway; and while using it the stairway fell, to her alleged injury. Further answering, defendants state that at and before the time of said alleged falling of said stairway, the plaintiff knew that it was unsafe, dangerous and unfit for her use, but nevertheless plaintiff voluntarily used said stairway for passage, and thereby assumed the risk that it would fall and that she would be injured in consequence thereof.

"Whereupon defendants pray to be hence discharged, with their costs in this behalf expended."

The reply was a general denial of the new matter set up in the answer.

The uncontradicted evidence is that plaintiff leased the premises in question, which were on the second floor, paid a month's rent in advance and moved therein; that she was unacquainted with the condition of the back stairway leading up to said premises and on her first attempt to descend them, they collapsed and plaintiff was precipitated to the ground, the debris of the stairway falling upon her, injuring her severely and painfully. Plaintiff testified that before attempting to descend, she looked down the stairway and it appeared to be safe; and, discovering no defects, she proceeded to descend, and there is not a scrap of evidence tending to show she was negligent in any respect whatever.

Niesen is a real estate agent, having his office on Chestnut street, in the city of St. Louis. At the time plaintiff rented the premises, Niesen had in his office a Miss Carroll, who attended to the renting of property he had on his rent list, and to the collection of rents when he was absent from the office. Plaintiff negotiated the lease with Miss Carroll and paid a month's rent in advance to her, Niesen not being present. Plaintiff testified that Miss Carroll represented to her that the premises were in good condition, and stated they always kept premises they had for rent in good condition and made repairs. Plaintiff offered in evidence the conveyances mentioned in her petition and the appointment of Niesen as agent, all of which documents were dated and filed for record December 30, 1897. The deed from defendant to the Bents was made subject to the deed of trust, given by Russell on the premises, which they assumed to pay; it was also subject to the agreement executed by Russell to F. E. Niesen, regarding the agency and management of the property.

The verdict was for plaintiff against Russell for two thousand dollars. A timely motion for new trial was filed which the court sustained, on the ground that

it erred in refusing to give the following instruction asked by defendants, to-wit:

"3.   The court further instructs the jury that the alleged contract in writing set out in the petition between defendants, imposes no obligation or duty upon the defendant C. S. Russell, to or towards plaintiff, to repair the premises therein referred to or to keep them in repair."

The appeal is from the order sustaining the motion for new trial.

BIAND, P. J. (after stating the facts).—1.   The instruction (No. 3.) for defendant should have been given, if by the reservation in his deed to the Bents, defendant retainel no interest in, or control of any part of the premises, or the rents and profits thereof.   Defendant's evidence tends to show that he bought the property at a trustee's sale for the benefit of the widow and heirs of James Bent, and for the purpose of paying off the deed of trust, under which the property was sold, and to pay other small debts of the estate of James Bent.   Defendant executed the deed of trust on the property to secure a loan of $7,500 and appointed Niesen his agent to manage the property, with authority to execute leases thereof and collect the rents, and then conveyed the property to the Bents, subject to the deed of trust and also subject to the appointment of Niesen as agent for the property.   By assuming the payment of the deed of trust, the Bents became liable as principals for the payment of the $7,500 loan, and defendant, in relation thereto, stood as surety.   The deed of trust was not paid at the date the premises were let to plaintiff.   The agreement between defendant and Niesen recites that Niesen had negotiated the loan of $7,500 for defendant and it was "to the mutual interest of the owner (of the premises) as well as the holder of the said mortgage, that said property be kept in constant repair, in order to realize the

greatest possible amount of income from the same."
Niesen was appointed agent for the management of the
property until the debt secured by the mortgage should
be paid. The agreement was made for the benefit of
the mortgagor as well as the owner, and the conveyance
to the Bents was subject to this agreement, and while
it does not, in terms, provide that the rents, after pay-
ments for repairs should be set aside or applied to the
payment of the mortgage, such was the evident purpose
of the parties. Another purpose had in view was to keep
the property in constant repair so that it would not de-
teriorate and thereby depreciate the value of the secur-
ity for the loan, which was for about the full value of the
property. The rents and control of the property, by the
reservation in the deed to the Bents, were reserved dur-
ing the life of the mortgage for the benefit of Russell, as
surety for the loan, and for the benefit of the holder of
the mortgage. A reservation in a deed is defined to be
"A creation in behalf of the grantor of a new right or
interest in the property granted." [6 Am. & Eng. Ency.
of Law, p. 515.] "A reservation is something taken back
out of that which is granted,—as, for instance, rent, or
some right to be exercised, as the cutting of timber."
[Youngerman v. Board of Supervisors, 110 Ia. 1. c. 736;
Cutler v. Tufts, 3 Pick, 1. c. 274; Randall v. Randall, 59
Me. 1. c. 340; Gould v. Howe, 131 Ill. 1. c. 497.] Accord-
ing to these authorities, defendant, by the reservation
in his deed to the Bents, retained an interest in the prem-
ises, and he, not the Bents, sustained the relation of
landlord to plaintiff and was the proper party defend-
ant in the suit.

2. It is not alleged in the petition, that the lessor
warranted the premises to be in good repair. The evi-
dence of plaintiff, however, is that the premises were
represented by defendant's agent to be in a good state of
repair and would be kept in that condition. Taylor says,
"As the lessor does not warrant the condition of the

premises, and the tenant, because he can inspect them assumes the risk of their condition; for any injury suffered by him during his occupancy on account of their defective condition, or even faulty construction, the tenant cannot make the lessor answerable, unless there was misrepresentation, active concealment, or, perhaps, total inability on the tenant's part to discover the defect before entry." [1 Taylor, Landlord and Tenant (9 Ed.), sec. 175a.] At section 175b the author says: "The common law doctrine of *caveat emptor*," applies to the right of the lessee in the leasing of property, "in the absence of any covenant or statutory provision abrogating it."

In Peterson v. Smart, 70 Mo. 1. c. 37, the following quotation from Jaffe v. Harteau, 56 N. Y. 398, is approved, to-wit: "A lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to lessee or others lawfully upon the premises, for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended."

In Gately v. Campbell, 124 Calif. 520, it was held: "In the absence of any covenant by the landlord for repairs in the lease of rented premises, or of any fraudulent representation or concealment on his part, or knowledge by him that the premises when rented were unfit for occupancy, he is not liable for injury to the tenant caused by the breaking away of the defective floor of a porch."

In Doyle v. Railway, 147 U. S. 413, it was held: "In the absence of fraud, misrepresentation or deceit, a landlord is not responsible for injuries happening to his tenant by reason of a snowslide or avalanche."

In Minor v. Sharon, 112 Mass. 477, it is said: "The owner of a dwelling-house, who, knowing that it is so infected with the smallpox as to endanger the health of the occupants, leases it, for the purposes of habitation, without disclosing the fact, to one who is ignorant of its

condition and who, without contributory negligence on his part, by reason of the state of the house, is attacked by the disease, is liable to an action." In Martin v. Richards, 155 Mass. 381, Minor v. Sharon was followed and applied, where the facts disclosed the lessor had failed to disclose the fact that there was a disused privy vault on the premises, the odors from which caused sickness and death in the family of the lessee.

In Maywood v. Logan, 78 Mich. 135, it was held: "The concealment by a landlord from a tenant of the polluted condition of the water in a well belonging to the leased premises, after his discovery of the cause, which he failed to remove, and which existed at the time of the leasing, will subject him to damages for all of the injuries naturally following from the use of the water, and the tenant, on discovering the facts, is justified in vacating the premises and terminating the tenancy, if the cause of such pollution cannot be removed; its presence amounting to an eviction, relieving the tenant from the payment of rent after such removal."

In Hines v. Willcox, 96 Tenn. 148, it was held: "A landlord is liable to his tenant for damages that may result from the unsafe and dangerous condition of the premises leased when that was known to, or with reasonable care and diligence might have been known to, the landlord, but not to the tenant, although the latter examined the premises and did not discover the defect." This case is reported with an extended note in 34 L. R. A. 824. At the conclusion of the note the annotator says: "It is not his (the landlord's) duty to search for defects, and if the defect is easily discoverable he need not mention it.". Hines v. Willcox was especially called to the attention of the Supreme Court in Whitely v. McLaughlin, 183 Mo. 160, 81 S. W. 1094, but the court refrained from deciding whether or not it was the duty of the landlord to use reasonable care to learn of the condition of

his premises before renting them, as it would not, under the evidence, help the case that was before the court.

In the light of these authorities, we do not think the common law doctrine of *caveat emptor* applies in all circumstances to the rights of the lessee in the leased premises. On the contrary, they hold that where there is anything (not easily discoverable) on or about the premises, rendering them dangerous for the purposes for which they are being let, and the landlord has knowledge of such danger, it is his duty to notify the lessee of it. It would be an extremely harsh and unjust rule to permit a landlord to lease premises with knowledge of a hazard thereon, to which the tenant would be exposed, to keep silent and yet escape liability, if the tenant, while in the exercise of due care, is injured in consequence of the exposure. While there is no direct evidence that either Niesen or defendant had knowledge of the unsafe condition of the stairway, yet from the long time it had been in that condition, and from the duty of Niesen, under his appointment as agent, to keep the premises in constant repair, the fair inference is that he did know of their condition, and his knowledge is imputable to defendant, whose agent he was. Besides, plaintiff maintained that Miss Carroll, acting for Niesen, represented to her the premises were in good repair at the time she rented them. If this representation was made, it was false, and there being no evidence whatever that plaintiff was at fault in failing to detect the unsafe condition of the stairway before, or at the time, she went upon it and was hurt, we think she made out a prima facie case, and that the refusal of the defendant's third instruction, for the reasons herein stated, was not error. Hence we rule that the trial court erred in sustaining the motion for new trial on the ground stated in its order. A considerable portion of defendant's brief is devoted to the discussion of the sufficiency of the petition. There are some unnecessary averments in the

petition, but it alleges facts sufficient to constitute a cause of action under the law, as we understand and have interpreted it. The judgment is reversed and the cause remanded with directions to the circuit court to set aside its order sustaining the motion for new trial, to overrule the motion and to render judgment on the verdict of the jury. All concur.