[Civ. No. 31153. Second Dist., Div. Four. Mar. 21, 1968.]

MARCELLA G. O'DONNELL, as Trustee, etc., Plaintiff and Appellant, v. SEYMOUR WEINTRAUB et al., Defendants, Cross-defendants and Respondents; FAYE Y. GOLDSTONE, as Executrix, etc., Defendant, Crosscomplainant and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Harvey M. Grossman, Henry J. Shames and Ira H. Lurvey for Plaintiff and Appellant.

Belle Silverman, Ellis J. Horvitz and Jack Tenner for Defendant, Cross-complainant and Appellant.

Goodman & Cogen, Benjamin Goodman, Kaplan, Livingston, Goodman, Berkowitz & Selvin and Herman F. Selvin for Defendants, Cross-defendants and Respondents.

KINGSLEY, J.—This is an action for declaratory and other relief with respect to the rights and obligations of the parties under a master lease of the Orpheum Building and a purchase money note and deed of trust on the leasehold estate.

Plaintiff O'Donnell, as trustee of certain trusts, is the holder of the note and beneficiary of the trust deed. Weintraub was the trustor of the trust deed and the lessee under the master

lease. Orpheum Realty, Inc., is a California corporation to which Weintraub purported to assign the master lease. Faye Y. Goldstone, cross-complainant, is the executrix of the will of Phil Goldstone, and in that capacity is lessor under the master lease.

In November 1954, a master lease was entered into for the Orpheum Building in Los Angeles, between Phil Goldstone as lessor and Standard Enterprises, Inc., as lessee, under a 50-year lease designated herein as "master lease." Paragraph 15(2) of the master lease provides that the lessee may assign, if not in default, on certain conditions, including the following: "That the assignee shall in writing assume and agree to keep, observe and perform all of the agreements, conditions, covenants and terms of this lease on the part of the Lessee to be kept, observed and performed. In such event and upon the asking and delivering to Lessor of said assumption by the assignee, the Lessee hereunder shall be released of further obligations pursuant to this lease."

In December 1961, Weintraub purchased the lessee's interest under the master lease and personally assumed the obligation of the lease. The validity of that transfer is not in question.

Weintraub paid only part of the purchase price in cash; for the balance he executed a purchase money promissory note, in the amount of $225,000, payable at the rate of $1,000 per month, secured by a deed of trust, in which he was the trustor, on the security of his lessee's interest in the leasehold created by the master lease. Both the note and the trust deed provide that there is no personal liability on the part of the maker and that the holder will look only to the security of the property. The trust deed provides in part: ". . . that Trustor will not surrender, cancel, alter or modify or consent to any surrender, cancellation, alteration or modification of his interest or rights in and to said leasehold estate pursuant to the provisions of said lease or otherwise unless prior thereto Beneficiary shall have expressly consented in writing to such surrender, cancellation, alteration or modification." There are also the words ". . . and that upon any assignment or transfer of the lease the assignee and transferee shall be subject to the agreements and obligations of the Trustor under this deed of trust."

On or about July 6, 1964, O'Donnell purchased the Weintraub note and the beneficial interest of the trust deed and notified Weintraub in writing.

Weintraub had made several defaults in payment and these defaults were cured by Weintraub.

On October 6, 1964, Orpheum Realty, Inc., a California corporation, filed its articles of incorporation and on October 31, 1964, Weintraub sold the Orpheum lease to the new corporation, subject to the 1961 deed of trust, for $75,000, evidenced by a purchase money promissory note. Orpheum gave Weintraub a second trust deed and Weintraub executed a document assigning the lease to Orpheum, and Orpheum executed a document in which it purported to assume liability.

Out of the 100 shares of stock in Orpheum issued in October 1964, 75 shares went to Banner Films, Inc., a Nevada corporation, of which Weintraub owns 80 percent of the stock, and the remaining 25 shares went to Ben Hecht, an associate of Weintraub whose company managed the Orpheum Building first for Weintraub and later for Orpheum. The officers and directors of Orpheum are (1) Ben Hecht; (2) Robert Crane, an employee of Hecht, who handled the management of the Orpheum Building before and after the assignment; and (3) Abe Koss, accountant for the Hecht Company, who supervised the accounting for the Orpheum Building both before and after the assignment. The Hecht Company performed the same functions in regard to the Orpheum leasehold both before and after the assignment. The Hecht Company managed 35 or 40 buildings in Los Angeles.

Orpheum had an initial capital of $10,000 and Orpheum had a cash deficit from the first month of operations. The deficits were made up by contributions from Ben Hecht and from Banner Films, in the same ratio as the respective stock interests of Banner and Hecht in Orpheum Realty, Inc. The lease is the only physical asset that Orpheum Realty, Inc. owns.

Benjamin Goodman was one of the attorneys for Weintraub and was also one of the attorneys for Orpheum.

It is alleged in the pleadings, and shown by the exhibits, that neither O'Donnell nor the lessor consented to the assignment to Orpheum and both O'Donnell and Goldstone (by her attorney) protested in letters. However, both O'Donnell and Goldstone cashed all the checks sent by Orpheum.

O'Donnell sued in declaratory relief claiming the assignment from Weintraub to Orpheum was a sham. The lessor Goldstone cross-complained for declaratory relief claiming the assignment to be invalid under the terms of the lease. The trial court, sitting without a jury, entered judgment in favor

of Weintraub and Orpheum, finding that the assignment to Orpheum was not a cancellation, alteration or modification of Weintraub's interest in the leasehold. The court found that the beneficiary of the note agreed to look only to the security of the property, that the assignment of the leasehold was not a breach of the lease or trust deed, and that Weintraub was released of any liability under the lease by the assignment. The court did not make a determination concerning the *alter ego* theory or doctrine on the grounds that there had not yet been a default by Orpheum on its payments.

The issues on appeal are whether the trial court erred in not deciding whether Orpheum Realty, Inc., is the *alter ego* of Weintraub, and whether the purported transfer to Orpheum Realty, Inc., absolved Weintraub of his duties under the lease and under the note and trust deed.

It appears that, on the basis of examining the two relevant written instruments set out in part above, the positions of the appellants, O'Donnell and Goldstone, are different. ▮ Since no extrinsic evidence was offered to aid in interpreting the master lease or the trust deed, this court is not bound by the trial court's construction of the written instruments in question. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Meininger* (1965) 237 Cal.App.2d 102 [46 Cal.Rptr. 609]; *Wilson* v. *Red Bluff Daily News* (1965) 237 Cal.App.2d 87 [46 Cal.Rptr. 591].)

## I

We examine, first, the case as between Goldstone and Weintraub.

▮ An examination of the terms of the master lease reveals no provision limiting the lessee's rights of assignment, except as they are contained in paragraph 15(2), above quoted. Clearly, that provision does not require the lessee to secure the permission of the lessor before assigning the leasehold interest. It requires only that any assignee assume the liabilities of the assignor under the lease. In fact, the language of the second sentence of the subparagraph in question appears to assume that an assignment will take place without the consent of the lessor, since it provides that the lessor should "ask" for delivery to it of an assumption agreement theretofore executed.

However, while the lessee was free to assign without the consent of the lessor, we cannot agree that he was free to assign to a mere dummy and, thus, escape personal liability

while retaining the economic benefits of the lease through his control of a dummy assignee. To accept that idea would render totally ineffective the sole protection that the lessor had retained—namely, that there would be a lessee in possession liable under the covenants of the lease. (*Shea* v. *Leonis* (1939) 14 Cal.2d 666 [96 P.2d 332].)

In fact, the case at bench is even stronger than *Shea*, since in that case the assignment did not relieve the assignor of liability under the covenants of the lease. But the Supreme Court held, even under those facts, that the purported assignment to an *alter ego* corporation should be disregarded.

It follows that the effect of the assignment by Weintraub to Orpheum turns on whether or not the purported assignee was a mere dummy or an actual separate entity—in other words, on whether or not Orpheum was the *"alter ego"* of Weintraub. The record before us contains evidence which, at least, raised that issue. Although Weintraub was not the sole stockholder of Orpheum, he not only owned the great majority of its stock but the other stock was held by persons who appear to be his agents or employees. ■ The doctrine of *alter ego* does not require that every share must be owned by the individual who seeks to mask his activities behind the fiction of a corporate identity. (*Meizlisch* v. *San Francisco Wool etc. Co.* (1931) 213 Cal. 668 [3 P.2d 310]; *Sunset Farms, Inc.* v. *Superior Court* (1935) 9 Cal.App.2d 389, 404 [50 P.2d 106].) The important fact is that the corporation is, in fact, controlled by the individual sought to be held and that recognition of the separate existence of the controlled corporation would work a fraud or an injustice.

■ In deciding to disregard the corporate entity, other courts appear to have considered such factors, among others, as use of the same attorney in both corporations (*Marr* v. *Postal Union Life Ins. Co.* (1940) 40 Cal.App.2d 673 [105 P.2d 649]), inadequate capitalizations (*Talbot* v. *Fresno-Pacific Corp.* (1960) 181 Cal.App.2d 425, 431 [5 Cal.Rptr. 361]), and failure to hold any assets other than the assets held by the prior lessee. (See *Shea* v. *Leonis, supra*, (1939) 14 Cal.2d 666.) In the case before this court the same attorney acted for both Weintraub and Orpheum, there is evidence of inadequate capitalization of Orpheum, and Orpheum's only physical asset was the same leasehold held by Weintraub.

■ We do not here decide the issue of *"alter ego"*; we merely point out that there was evidence from which such a finding might have been made. For reasons hereinafter set

forth, we hold that the trial court erred in not making a finding on that issue.

Instead of making such a finding, the trial court made a finding that the issue was not relevant unless and until there was an actual default under the master lease. In this the court was in error. The action is not one for damages but for declaratory relief. "In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status or other legal relations encountered in construing the instrument before it. [Citations.]" (*American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 219 [236 P.2d 935].)

 In the instant case it is clear that there is an actual and existing dispute over the effect of the assignment to Orpheum on Goldstone's rights. As we have shown, that effect turns on the question of the status of Orpheum as an *alter ego* of Weintraub or a truly independent corporation. Goldstone is entitled to a finding on the issue on which her rights depend.

However, even if Orpheum is found to be the mere *alter ego* of Weintraub, that will not mean that there has been a breach of the master lease. As we have pointed out, the lease does not prohibit the lessee from making an assignment of his interests. The only effect of an *alter ego* finding would be to prevent the operation of the provision which provides for a release of the lessee from liability. *Alter ego* or not, we can see no invalidity in the assignment as such and no breach arising therefrom.

 It follows, of course, that—the assignment being valid— Goldstone has waived no rights by accepting rent from the assignee, whose payment did no more than satisfy *pro tanto* Weintraub's alleged continuing liability.

## II

We turn, now, to examine the case as between O'Donnell and Weintraub.

 As we have noted above, the trust deed, under which O'Donnell is now the beneficiary, provides that the "Trustor [Weintraub] will not surrender, cancel, alter or modify or consent to any surrender, cancellation, alteration or modification of his interest or rights in and to said leasehold estate pursuant to the provisions of said lease or otherwise." We can discover no other provision in the note or deed of trust that affects Weintraub's rights of assignment.

It is true that, in one sense, an assignment "modifies" the assignor's rights in and to the leasehold estate, since he is no longer the tenant in possession nor the sole obligor.

Volume 5, California Jurisprudence, Second Edition, Assignments, section 2, page 373, in defining assignments, notes that the term "signifies a personal act which, while evidencing intention to transfer, is nevertheless a fully executed act effectuating an immediate change of ownership."

Restatement of the Law, 1932, Contracts, section 149, page 179, defines an assignment of a right as "a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such other person or to a third person."

However, we do not think that the quoted clause was intended to, or does, apply to an assignment of the master lease. For one thing, as noted above, the trust deed, after setting forth the provision relied on by O'Donnell, proceeds to provide for the liabilities of an "assignee"—a provision inconsistent with reading the trust deed as prohibiting assignments. In addition, the whole tenor of the clause involved is to the effect that Weintraub will do nothing to diminish or destroy the leasehold estate, whoever the lessee in possession might be; the reference to "his" interests or rights should be read as though it had said "the lessee's" interests or rights.

But that holding does not dispose of the case as between O'Donnell and Weintraub. Weintraub is, clearly, bound to do nothing that might affect the existence of the leasehold. As we have pointed out above, if the assignment to Orpheum is a mere sham, Weintraub is still liable for the rental payments due under the master lease and, even though (as all parties admit) he is not personally liable for payments on the trust deed note, his covenant above quoted contained in the trust deed, to protect the lease which is the sole security for the note, obligates him to O'Donnell as well as to Goldstone to see that the lease does not fall into default.

It follows that O'Donnell is as much entitled as Goldstone to a determination of the *"alter ego"* issue and to a declaration of Weintraub's duties and obligations as affected by that determination.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for rehearing was denied on April 16, 1968 and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied May 15, 1968.