NORCOMO CORPORATION, a Delaware Corporation, (Plaintiff) Respondent,

v.

FRANCHI CONSTRUCTION CO., INC., a Massachusetts Corporation,

and

Norwood Court Management Corporation, a Missouri Corporation, (Defendants) Appellants.

No. 38911.

Missouri Court of Appeals, Eastern District, Division One.

July 24, 1979.

Motions for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Lewis, Rice, Tucker, Allen & Chubb, Henry F. Luepke, Jr., F. William McCalpin, St. Louis, for appellants.

J. Peter Schmitz, Mary Stake Hawker, St. Louis, for respondent.

SMITH, Judge.

Defendants appeal from a judgment against them of $191,641.54 entered in a court-tried case arising from a sophisticated financing arrangement between Franchi Construction Company (Franchi) and Chase Manhattan Bank (Chase).

In 1968, Franchi, a Massachusetts corporation qualified to do business in Missouri, was interested in obtaining permanent financing for an apartment complex it was building in the City of Normandy in St. Louis County. Pasquale Franchi was the president and almost sole stockholder of Franchi. Negotiations commenced between Franchi and Chase for such financing. Because of the amount involved, Chase advised Franchi that conventional financing would not be possible and suggested "split-financing". Essentially the transaction involved several steps:

(1) Sale, to Chase by Franchi, the owner, of the approximately eleven acres of land upon which the apartment complex was located for $550,000. The sale reserved to Franchi the ownership of the improvements (buildings) on the land until the expiration of the lease next described.

(2) Leaseback of the land to Franchi for a period of not to exceed 28 years. Rental under the lease was $44,000 annually in monthly installments in base rent and 10% of gross rents from rental of the apartments. Upon termination of the lease, land and buildings became the property of Chase.

(3) A note for $3,900,000 from Franchi to Chase secured by a deed of trust on the leasehold interest and the buildings.

Although the negotiations were between Franchi and Chase, the latter was acting as Trustee for the Pooled Trust Fund for Employee Benefit Plans-Fund K–1. Chase caused to be incorporated Norcomo Corporation (Norcomo) a Delaware corporation and qualified it to do business in Missouri. Norcomo was created to serve as the corporation to own the land, grant the lease and collect the rentals from Franchi for transmission to Chase for the Pooled Trust Fund.

Following some negotiations, the above indicated arrangement was worked out and a letter of commitment setting forth the terms of the financing arrangement was issued by Chase in November 1968. That letter included a requirement that the "ownership of leasehold estate created by the Lease and of the improvements shall at all times remain in the same legal entity." It further provided that the mortgage would contain a provision giving the mortgagee a right to accelerate the due date of the note if "the Mortgagor shall sell or dispose of the Mortgaged Property as an entirety or substantially as an entirety to an individual or individuals not originally involved as principals in this commitment or a corporate entity other than Franchi Construction Co., Inc. or a nominee owned and controlled by it or if the present holder(s) of the voting securities of the Mortgagor shall sell or dispose thereof so that possession, directly or indirectly, of the power to direct the operation, management and policies of the Mortgagor shall pass to someone other than the said holder(s) or if the Mortgagor shall be dissolved or shall merge or consolidate with or into any other corporation; . . . ." This provision in more fulsome language was a part of the deed of trust and made loss of control by Pasquale Franchi an "event of default", permitting acceleration of the note and requiring that the mortgaged premises be surrendered upon demand to the trustee of the deed of trust.

At trial it was explained by an employee of Chase that these provisions were neces-

sary in order to have the expertise of Pasquale Franchi and his organization to run the apartment development.

In addition the letter stated: "The loan shall be evidenced by your non-recourse Note or that of your nominee . . . ." This last provision was insisted upon by Mr. Franchi. The transaction was closed in the name of Franchi. A nominee was not used.

In August 1971, in accord with the letter of commitment the required papers were executed and the deal was closed. At that time the note, deed, lease, and deed of trust were executed. Included in the lease was the following provision:

"Section 13.01. Without the prior consent of Lessor, this lease may be assigned on one or more occasions to any person, firm or corporation authorized under the law of the state in which the demised premises are situate to own and convey real property provided there shall be delivered to Lessor (a) a duplicate original of the instrument or instruments of transfer of this lease in recordable form, containing the name and address of the transferee thereof and (b) an instrument of assumption by said transferee of all of Lessee's obligations under this lease; and further provided, that Lessee shall transfer and convey all its right, title and interest in the Building to such transferee and deliver to Lessor such evidence of the transfer as Lessor may reasonably require. Notwithstanding the aforesaid, Lessee and its successors and assigns shall continue to remain liable thereafter for the performance on the 'Lessee's' part of the covenants and agreements contained in the lease. This section shall apply to all reassignments of this lease."

Upon the refusal of Franchi to accept this language an amendatory letter was executed contemporaneously with the execution of the lease which contained the following:

"Notwithstanding the second to last sentence of Section 13.01, in the event you assign your interest in the Lease in accordance with the provisions of Article 13 thereof you shall be released from all liability in respect of rent reserved and future obligations to observe and perform the terms, covenants and conditions contained in the Lease and all actions, proceedings, claims and demands in respect of any future breach of any such terms, covenants and conditions."

To a large extent the appeal before us turns upon the meaning and application of this paragraph of the amendatory letter.

The rental income from the apartment complex was insufficient to meet the operating expenses and service the loan agreements. The base rent was kept current but no percentage rents were paid and only a portion of the real estate tax escrow account payments were met. In August 1973, after some discussions between Franchi and Chase and with the threat of foreclosure before it, Franchi caused Norwood Court Management Corporation (Norwood) to be formed as a Missouri corporation. On September 18, 1973 Franchi assigned the lease and the fee title to the buildings to Norwood. In the same document, Norwood executed an assumption of lease which included the following language:

"2. Assumption of lease. In consideration of the foregoing assignment the Assignee agrees to assume the rights and obligations of said lease for the balance of the term thereof, to pay the rent and additional rent, and faithfully to perform all of the covenants, stipulations and agreements contained therein."

In November 1973, the Trustee under the deed of trust foreclosed the deed of trust on the leasehold estate and buildings and pursuant to a Trustee's sale the foreclosed interests were sold to Norcomo. That company then executed a document entitled "Declaration of Grantee of Real Property" by which it declared that it did not desire that the interest acquired at the foreclosure sale be merged with the deed for the underlying land originally devised to Norcomo by Franchi. This declaration served to continue in effect the lease and leasehold estate.

At the time of the foreclosure none of the percentage rents had ever been paid and the real estate tax escrow account was sub-

stantially deficient. Norcomo then brought the instant action against Franchi and Norwood to recover those amounts as well as certain tenant deposits collected by Franchi and Norwood. The trial court awarded $95,903.74 plus interest of $19,311.29 against Franchi and Norwood, jointly and severally, for percentage rents until the date of foreclosure, and $52,622.97 plus interest of $9,169.38 against Franchi and Norwood, jointly and severally, for 1973 real estate taxes prorated through the date of foreclosure. It also awarded $13,869.16 against Franchi and $725 against Norwood for tenant deposits. These tenant deposit items are before us on appeal only on the basis of defendants' contention that Norcomo lacks capacity to sue.

The heart of the judgment of the trial court is that the assignment to Norwood and its assumption of the lease was not a bona fide transaction and therefore that such assignment cannot as a matter of law relieve Franchi of its obligations under the lease. Inasmuch as we find the legal conclusion in error a different result ensues.

■ We deal first with defendants' contention that Norcomo was a sham corporation, not the real party in interest, and was used by Chase to circumvent Federal and State laws. Norcomo was a duly and properly organized corporation qualified to do business in Missouri. The lease, which is a contract, and the warranty deed named Norcomo as a party. It was therefore "a party with whom or in whose name a contract has been made for the benefit of another" within the meaning of Rule 52.01 and was a proper party to bring the suit. It may be conceded, as it was by plaintiff, that Norcomo was created for the sole purpose of owning the land, entering into the lease, and collecting the rent pursuant to the lease. But this is a common business practice and was fully revealed to Franchi before any documents were finally executed in 1971. We have been cited to no authority holding that utilization of a subsidiary corporation to transact business within a state is illegal.

■ Defendants also contend that Chase is in violation of Secs. 362.165 and 362.600 RSMo 1978 and Secs. 29 and 92a of Title 12 U.S.C. because it is through Norcomo operating as a fiduciary in Missouri and holding real estate. We need not decide the legality of Chase's actions. It is well established that even if ownership of land by a non-resident national bank is beyond the powers of the bank its authority may not be questioned by a party to the transaction for the purpose of avoiding the transaction, but may only be questioned by the sovereign. *National Bank v. Matthews*, 98 U.S. 621, 25 L.Ed. 188 (1878); *Baker v. Schofield*, 243 U.S. 114, 37 S.Ct. 333, 61 L.Ed. 626 (1917); *Hall v. Farmers' & Merchants' Bank*, 145 Mo. 418, 46 S.W. 1000 (1898); *Total Automation, Inc. v. Illinois National Bank & Trust Co.*, 40 Ill.App.3d 266, 351 N.E.2d 879 (1976). Defendants may not assert claimed ultra vires conduct by Chase to avoid the consequences of a transaction of which they have had the benefit.

We turn now to the substantive merits. It is defendants' contention that pursuant to the amendatory letter the assignment of the lease to Norwood relieved Franchi of any obligations under the contract, both those which had already accrued and those which were to accrue in the future. They contend, therefore, that all percentage rents due at the time of the assignment became liabilities of Norwood and that Franchi was released from liability therefrom. They further contend that since no real estate taxes for 1973 were due at the time of the foreclosure neither Franchi nor Norwood are liable therefor, or alternatively, if proration of such taxes is required under the lease upon foreclosure the liability for such taxes is only Norwood's.

Plaintiff contends that the assignment was not a bona fide transaction and did not serve to release Franchi from any obligations either before the assignment or after the assignment until foreclosure. It further contends that the lease requires Franchi and Norwood to pay the 1973 real estate taxes pro rata until the date of foreclosure.

■ We touch first upon certain general considerations. Our scope of review is that set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We are bound by the trial court's fact determinations unless unsupported by the evidence or clearly against the weight of the evidence. The deference which we accord the trial court to assess credibility is of little consequence in this case because the oral testimony was largely consistent and served primarily as a foundation for the introduction of documentary evidence upon which the case must turn. We find the findings of fact of the trial court fully supported by the evidence. We are required under *Murphy v. Carron, supra*, to determine whether the trial court has erroneously declared or erroneously applied the law. The construction and interpretation of a contract or contracts is a matter of law.

■ Plaintiff seeks to invoke certain equitable principles. The case started in equity because as filed it sought equitable relief—an accounting. Discovery provided the required accounting information but the case remained in equity under the doctrine of ancillary jurisdiction. Equity follows the law. The rights of the parties are to be determined from the contracts into which they entered and the consequences of those contracts and not from some generalized concepts of equity.

■ It is clear from the evidence that the transaction here involved was between two business entities highly knowledgeable and sophisticated concerning financing. Each was quite capable of protecting itself and both functioned with experienced counsel. Negotiations were adversary and prolonged. The initial drafts of the documents were carefully scrutinized, criticized, and amended. Both parties contributed to the final executed documents which include a 63 page lease and 30 page deed of trust. It is apparent that certain frequently invoked rules of construction, most notably that of interpreting a contract most strictly against the preparer, have no application to this case.

■ We agree with the trial court that the deed of trust/note and the lease are separate documents and each must be interpreted and enforced according to its own terms. The provisions of one are not to be impliedly incorporated into the other. However, these documents, along with others, constituted one complicated interdependent transaction. The documents contain references to each other, and obviously are closely related. The intent of the parties and the meaning of those documents must be determined from the entire transaction and not simply from isolated portions of a particular document. *Tri-State Gas Co. v. Kansas City Southern Railway Co.*, 484 S.W.2d 252 (Mo.1972). With these considerations in mind we turn to the particulars.

■ The first and most important determination is the validity of the assignment to Norwood by Franchi. The trial court found this assignment was not a bona fide assignment and that "the amendatory letter required and contemplated a bona fide assignment and assumption of the lease under conditions whereby the assignee could reasonably expect to meet the obligations due under the lease and the lessor could reasonably expect performance by the assuming assignee." We agree that the assignment was an effort by Franchi to rid itself of the obligations of the lease when it was apparent that the deed of trust would be foreclosed and further agree that Norwood did lack the financial capacity to meet the lease obligations. But, the key question is whether the assignment made was that contracted for. If the intent of the contract was to allow Franchi through assignment to escape from the liabilities of the contract the parties are free to so contract. *Jenkins v. John Taylor Dry Goods Co.*, 352 Mo. 660, 179 S.W.2d 54 (1944); *Alexander v. Theatre Realty Corp.*, 253 Ky. 674, 70 S.W.2d 380 (1934). We find that was the intention as to future liabilities.

We find the following undisputed facts support that conclusion:

(1) Pasquale Franchi from the beginning demanded that the financing be non-recourse as to him and Franchi Construction

Co. The note specifically provided for such non-recourse and restricted Chase to the value of the mortgage property to protect its investment. While we do not hold that the language of the note can be incorporated into the lease, the recourse provision does shed light on the intentions of the parties.

(2) The commitment letter, and the lease and deed of trust all provided that ownership of the buildings and the leasehold were to remain in the same legal entity. The significance of this provision and the following one are discussed in (6) *infra*.

(3) The commitment letter and deed of trust provided that it could be accelerated (and thereby effectively terminated) by Chase if the buildings (and in view of (2) above thereby the lease also) were transferred to any person or entity other than an entity controlled by Mr. Franchi or if the corporate ownership of Franchi Construction vested in anyone other than Mr. Franchi.

(4) Franchi was authorized to close the transaction with a note from itself or a nominee. This language clearly envisaged a subsidiary or shell corporation as a possible maker of the note.

(5) The assignment language of the lease was unequivocal. It permitted assignment at any time without prior consent of Norcomo on one or more occasions to any person, firm or corporation authorized under Missouri law to own and convey real estate provided also that ownership of the buildings was conveyed to the same transferee. The amendatory letter insisted upon by Franchi, provided that upon assignment Franchi was released from "all liability . . . ." It is unreasonable to believe that a knowledgeable lender such as Chase would permit such an unlimited unilateral assignment at any time if it was concerned about insuring the financial responsibility of the assignee, or that it would fail to include limiting language concerning financial responsibility of the transferee if financial responsibility was a condition of transfer.

(6) While the assignment language of Sec. 13.01 is broad, when combined with the provisions set forth in (2) and (3) above it is apparent that the assignability was in fact limited to a subsidiary, shell or nominee corporation controlled by Mr. Franchi. Unless the type of assignment actually made was contemplated by the lease and letter, we must presume that Chase intended that Sec. 13.01 as modified, while appearing to make the lease assignable and to release Franchi from further liability, was in fact a provision which had no meaning and was inserted to induce Franchi to execute the documents in reliance upon a nonexistent promise. We cannot attribute such duplicity to Chase nor such naivete to Franchi.

We find *O'Donnell v. Weintraub*, 260 Cal. App.2d 352, 67 Cal.Rptr. 274 (1968) and *Cinderella Theatre Co. v. United Detroit Theatres Corp.*, 367 Mich. 424, 116 N.W.2d 825 (1962) relied upon by plaintiff to be distinguishable. In both the court recognized that the intention of the parties to the contract, as exemplified by the contract documents and history of the transaction was controlling. On the facts before them the courts found implicit that assignment was to be made to a solvent assignee. The facts before us convince us of the opposite.

We therefore conclude that it was the intention of the parties that Franchi would have the right at any time to terminate further liability under the contract by assignment to an insolvent or shell corporation controlled by Franchi. Franchi's exercise of that option, whether described as bona fide or not,[1] was in accord with the contract and the results of that assignment must be determined from the provisions of the amendatory letter and the lease.

---

1. Norcomo argues here that the action of Mr. Franchi in obtaining from Norwood some $30,-000 of rent money collected by Norwood which was placed in Mr. Franchi's personal bank account affects Franchi's liability. The money was treated by Mr. Franchi and Norwood as a loan and there are legal procedures available to secure that money to pay the debts of Norwood. We do not find that such conduct changes the legal effect of the assignment.

We turn first to the problem of percentage rentals. As to those rentals collected after the effective date of the assignment, those became a liability of the assignee Norwood and not of Franchi. As to those percentage rentals which were collected prior to the assignment Franchi argues that the amendatory letter releases it from all liability whether accrued or to accrue in the future. The parties have discussed in this connection the use of the words "rent reserved" in that letter. We cannot give any particular significance to the term "reserved". It is a word which has been combined with "rent" by lawyers since antiquity probably with little understanding of its history or specific meaning. A reservation is the creation of a new interest in an estate which the grantor keeps for himself. *See Dozier v. Toalson*, 180 Mo. 546, 79 S.W. 420 (1904); *Meyers v. Russell*, 124 Mo.App. 317, 101 S.W. 606 (1907); Tiedeman, Real Property, 3rd Ed. 1906, Ch. VIII, Sec. 149. When it is remembered that a lease is the relinquishment of possession and control of property by the owner, the term "rent reserved" has reference to the present interest reserved by the owner, in short, the owner reserves the right to collect rent.

The release language of the amendatory letter is prospective as is the language used in the assumption agreement. Defendants contend that the use of the language "any liability" evidences an intention to release Franchi from both accrued and prospective liability. But "any liability" is further modified by language referring to "future obligations" and "future breach". Had both accrued and prospective liability been intended to be released it would have been unnecessary to address at all what specific liability was released, it simply could have been provided that Franchi was released from "all liability under the lease." Similarly Norwood's agreement refers to assumption of "the rights and obligations for the balance of the term thereof", clearly a future undertaking. And for the assignment to be effective the assumption must be co-extensive with the right of assignment. The language used in the assumption agreement indicates the understanding of Franchi, which controlled Norwood, of the extent of the assignment and assumption. The interpretation given a contract by the parties is a valid consideration in construing the contract. *Landau v. Laughren*, 357 S.W.2d 74 (Mo.1962) [2]; *Meredith Development Co. v. Bennett*, 444 S.W.2d 519 (Mo.App.1969) [3]. In view of the use of prospective language to describe the obligations released and assumed, we find the provisions concerning rent to also be prospective in application.

The provision for assignment, which we have held to provide an "escape hatch" for Franchi, does not directly or by implication make that "escape" retroactive. Logic and business reality militates against such retroactive application. While Chase has agreed to assignment to a corporation lacking financial wherewithal to meet its obligations, Chase's rights under the mortgage and Norcomo's rights under the lease are sufficiently flexible to allow them to protect themselves immediately in the event of failure of such a corporation to meet its obligations. The willingness to delay foreclosure or enforcement of rights under the lease in reliance upon the apparent financial solvency of Franchi does not warrant the conclusion that such forebearance would be accorded a shell corporation. The assignment provision of the lease required notification to Norcomo of such assignment and assumption. Furthermore, retroactive release for percentage rents would be most unusual in a situation such as this where the released lessee has already collected the gross rents upon which the 10% rent is based. In the absence of a clear provision releasing Franchi from its accrued obligations under the lease we will not create such release by implication. We find no such clear provision.

Franchi admitted that it collected the rents for September and that Norwood collected rents only for October. Rents thereafter were collected by Norcomo following foreclosure. Percentage rents due from the commencement of the obligation for such rents in April 1972, through September,

1973 in the amount of $90,748.02 are an obligation of Franchi and judgment for that amount plus interest of $32,962.08 should be entered against Franchi. The October percentage rents in the amount of $5,155.71 plus interest of $1,770.53 are the obligation of Norwood and judgment for that amount should be entered against Norwood.

■ Defendants attack the computation of the amount of the percentage rents due as contrary to the provisions of the lease. The argument made is based upon certain provisions of the lease having to do with computation of projected monthly payments of such rent based upon the prior year's experience and with an adjustment payment or credit after the full fiscal year. The amount of percentage rent, however, is clearly 10% of the gross rent of the apartment complex and defendant's books were kept to so reflect. That is the amount for which the defendants are liable, regardless of what the projected monthly figures might have been or when the date of the adjustment payment fell due.

■ The remaining point concerns the taxes. The lease provided that Lessee pay the taxes "before any fine, penalty, interest or cost may be added thereto for the non-payment thereof", but there was no lease obligation that monthly payment of taxes be made. There was such an obligation under the deed of trust for an escrow account but the deed of trust was expressly non-recourse as to all obligations thereunder. Under Missouri law payment of the 1973 taxes was due Dec. 31, 1973. Sec. 140.010 RSMo. 1978. Therefore, on the date of the assignment there was no obligation on the part of Franchi to pay the taxes. The taxes were a future obligation under the lease from which Franchi was released by the assignment pursuant to the amendatory letter. While the lease refers to the assessment, levy, imposition and lienability of taxes, that reference identifies the taxes which the lessee is required to pay, not the time when the payment must be made. *See, Jenkins, supra,* [11].

■ The payment of taxes was also a future obligation on the date of the foreclosure and the foreclosure terminated the rights and future obligations of Norwood as lessee. There is a provision of the lease which provides for pro-ration of the taxes between the lessor and lessee where the fiscal period of the taxing authority is such that a portion of the tax year occurs during the term of the lease. That provision states that the taxes "shall . . . be adjusted between Lessor and Lessee as of the commencement date or *expiration of the term of this lease* . . . ." Here Norcomo specifically elected after foreclosure to continue the lease in effect. The effect of this action was that the lease did not expire. Upon the date when the obligation to pay taxes became due the lease was in effect and Norcomo was the lessee. The lessee has the obligation to pay the taxes. In this connection it should be pointed out that Norcomo acquired the leasehold at foreclosure in a position separate in legal contemplation from its position as mortgagee. Its acquisition at the foreclosure sale of the leasehold is equivalent in law to the acquisition by an outsider which could not as purchaser have sought contribution from Franchi or Norwood, and which, as the acquiring lessee, would have assumed the obligation to pay the 1973 taxes. That Norcomo could have, through merger, ended the leasehold does not warrant a conclusion that its purchase at foreclosure and option not to terminate the lease requires it to receive different treatment than a stranger to the transaction. Judgment on Count II for the taxes should be for defendants.

Judgment on Count I set aside and judgment is entered in favor of plaintiff Norcomo Corporation and against defendant Franchi Construction Company Inc. in the amount of $90,748.02 plus interest in the amount of $32,962.08 for a total judgment of $123,710.10 and judgment is further entered in favor of plaintiff Norcomo Corporation and against defendant Norwood Court Management Corporation in the amount of $5,155.71 plus interest in the amount of $1,770.53 for a total judgment of $6,926.24. Interest has been computed on said judgments through July 24, 1979.

Judgment on Count II reversed and judgment entered in favor of defendants and against plaintiff.

Judgment on Count IV and judgment for costs in the trial court affirmed.

Costs on appeal to be paid one-half by plaintiff and one-half by defendants.

WEIER, C. J., and SNYDER, P. J., concur.