Fred EATHERTON & Anna May Eather-
ton, Plaintiffs-Respondents,

v.

Donald J. MOORE & Judith A. Moore,
Defendants-Appellants.

No. 43705.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 11, 1982.

Stephen C. Murphy, Clayton, for defend-
ants-appellants.

Paul A. Hennerich, III, Chesterfield, for
plaintiffs-respondents.

SMITH, Presiding Judge.

Defendants appeal from a judgment
against them of $3500 plus interest in a
court-tried case. Plaintiffs' petition alleged
that defendants entered into a commercial
lease with plaintiffs for the lease of a resi-
dence in St. Louis County at an annual
rental of $6000 payable in equal monthly
installments; that defendants entered into
possession of the premises; that they vacat-
ed the premises before the termination of
the lease; that they paid $2500 of the rent
called for in the lease; and that there is due
and owing $3500 "as and for rent under this
commercial lease."

Defendants counterclaimed seeking the
return to them of $1000 earnest money
deposited pursuant to a sale contract be-
tween the parties executed contemporane-
ously with the commercial lease and cover-
ing the same property. Judgment was en-
tered in favor of defendants on their coun-
terclaim. No appeal has been taken from
that judgment.

Because of the principles of contract in-
terpretation, hereinafter discussed, it is nec-
essary to examine both sale contract and
commercial lease to determine defendants'
liability under the lease. The sale contract,
dated Feb. 2, 1978, contained a number of
special agreements. They included: (1)
that the obligation of purchaser was condi-
tioned upon the premises being zoned to
permit "Purchaser's use" and in the absence
of such zoning that the contract be "null

and void"; [1] (2) that the sale was contingent, at the option of purchaser, on the sale and closing of purchaser's present home in Wentzville on or before May 1, 1979; (3) that the contract was conditioned upon "Seller signing a lease with Purchaser to lease [the property] for a period not to exceed one year from date of occupancy permit as provided for in lease; " (4) that rental under the lease be $500 per month "beginning upon an occupancy date no more than one-hundred twenty (120) days after acceptance by Seller and conditioned upon tenant/buyers receipt of necessary permits, licenses and zoning as outlined [above]."

The Commercial Lease provided that the property was leased for use as a residence and printing shop. The term of the lease was for a term of 12 months "commencing upon issuance of an occupancy permit." By special agreement in the lease it was provided that the lease would terminate when the sale contract was closed" as outlined in Paragraph 6b of Special agreements to contract." That paragraph provided for "Lease/rental payments to end upon final closing date of sale contract . . ."

The evidence established that it was the intention of defendants to live in the residence on the property and operate a printing shop from the garage on the property. The residence was located in the City of Creve Coeur, the garage in the unincorporated portion of St. Louis County. Efforts were made by defendants to obtain a special use permit from the City of Creve Coeur but issuance of such permit was conditioned upon certain expensive improvements being made to the land. Defendants were unwilling to make the improvements. Defendants made some contact with the County but no zoning change or special use permits were obtained from the County. Defendants moved into the premises on March 13, 1978, and moved out on August 23, 1978. No occupancy permit was ever obtained. The record does not establish whether an occupancy permit was required for defendants to move into the residence. In December, defendants advised plaintiffs that they would no longer pay the utilities. Defendants' house in Wentzville was never sold.

Plaintiffs sought relief solely on the basis of the commercial lease. Neither here nor in the trial court did they seek recovery upon any other theory such as that defendants as month-to-month tenants failed to provide notice of the termination of their tenancy. We therefore limit our consideration to the theory upon which plaintiffs rely. Defendants contend that the lease never became operative because no "occupancy permit" was ever issued and that by the express language of the lease the term of the lease did not begin until such a permit was issued. Plaintiffs contend that the term "occupancy permit" was merely surplusage and that the lease commenced when defendants occupied the premises.

■ Our review is that prescribed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo banc 1976) [1–3]. The construction and interpretation of a contract is a matter of law and it is our obligation to determine whether the trial court has made an erroneous construction or interpretation of the contract. *Norcomo Corp. v. Franchi Construction Co., Inc.*, 587 S.W.2d 311 (Mo.App.1979) [3, 4]. We conclude it has.

■ The cardinal rule on construction of a contract is to ascertain the intention of the parties from the document and the surrounding circumstances and conditions. *Mathews v. Knoll Associated, Inc.*, 388 S.W.2d 529 (Mo.App.1965) [1]. We must consider the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding circumstances and facts leading up to and attending the execution of the contract, and the apparent purpose which the parties were undertaking to accomplish. *Veatch v. Black*, 363 Mo. 190, 250 S.W.2d 501 (1952) [2, 3]. Where two consistent contracts are ex-

1. The purchaser had 120 days to fulfill this contingency. The contingency was extended in part at least until Dec. 30, 1978.

ecuted as part of the same transaction, they should be read and considered together to ascertain the intent of the parties. *Berry v. Crouse,* 376 S.W.2d 107 (Mo.1964) [1]; *Tri-State Gas Co. v. Kansas City Southern Railway Co.,* 484 S.W.2d 252 (Mo.1972) [2–4]; *Norcomo Corp. v. Franchi Const. Co., Inc., supra,* [7].

The two documents here (lease and sale contract) refer to each other and each contains conditions by reference to the other. They are consistent with each other. The purpose of the transaction was for defendants to buy a parcel of land which could be used as a residence and a place of business. The lease was entitled "Commercial Lease." The sale contract was dependent on the obtaining of proper zoning or special use permits to enable defendants to use the property for their business. The time for obtaining these permits was originally 120 days, far less than the term of the lease. The lease term of one year when added to the time for obtaining permits very nearly equals the length of time provided in the contract for defendants to sell their residence in Wentzville, another condition to the enforceability of the sale contract. The sale contract specifically provided that rental would be $500 per month beginning at the time of occupancy and conditioned upon the tenant-buyer's receipt of the necessary permits, licenses and zoning necessary for the purchasers' use. Further the lease and sale contract both provided that the lease would terminate upon the closing of the sale contract. Examining the circumstances and both documents, we believe that the intention was clear to commit purchasers to the lease only if the property could be utilized for the commercial purposes they intended. The lease was designed to make the property available to defendants from the time it became usable for commercial purposes until defendants were able to sell their present residence. We find that "occupancy permit" was the term utilized by the parties to refer to the authority to utilize the premises for commercial purposes. That authority was admittedly never obtained and the lease by its terms never commenced. Defendants' pos-session of the premises was not by virtue of the lease and plaintiffs cannot recover pursuant thereto.

Judgment reversed.

SATZ and PUDLOWSKI, JJ., concur.